1999 ND 30

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Jon BURGER, Defendant and Appellant.**

**Criminal No. 980081.**

Supreme Court of North Dakota.

Feb. 23, 1999.

Rehearing Denied March 18, 1999.

Bruce A. Romanick, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Michael R. Hoffman, Mandan, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Jon Burger appeals from a criminal judgment entered upon a jury verdict finding him guilty of attempted theft by deception. We affirm.

I

[¶ 2] On May 2, 1996, Burger mailed an application to Gerber Life Insurance Company (Gerber) for a $15,000 life insurance policy on his infant son, Preston. The application and cover sheet promised a "30 Day Free

Look" and stated "SEND NO MONEY." Gerber issued a policy and sent a premium notice dated May 19, 1996, to Burger. Preston died on June 16, 1996. Burger's father and father-in-law testified that the day after Preston's death Burger asked about backdating a check to pay the premium on Preston's life insurance.

[¶ 3] On June 24, 1996, Gerber received a check dated June 13, 1996, from Burger for the premium on Preston's life insurance policy. Gerber eventually refunded the premium to Burger and denied the claim on the policy. The June 13 check from Burger to Gerber was numbered 553. Evidence at trial showed that the preceding checks numbered 549 to 552 were dated June 15, and the subsequent checks numbered 554 to 556 were dated June 16.

[¶ 4] After Gerber denied his claim, Burger hired a lawyer to pursue his claim for the insurance proceeds. Burger told the lawyer he had signed and mailed the check to Gerber on June 13, three days before Preston's death. The lawyer reiterated that assertion of fact in a demand letter to Gerber. Gerber offered to settle the claim for $3,500, but before the settlement was finalized law enforcement officials advised Gerber that they were investigating allegations Burger had filed a fraudulent insurance claim. Gerber immediately withdrew its offer.

[¶ 5] Burger was subsequently charged with attempted theft by deception for allegedly backdating the check to Gerber in an effort to collect the insurance proceeds. Burger testified at trial that he did not specifically remember writing and mailing the check to Gerber, but that he often wrote checks out of sequence and that must have happened in this case. The jury found him guilty and judgment of conviction was entered. Burger appealed.

II

[¶ 6] Burger was charged with attempted theft by deception. Section 12.1-23-02(2), N.D.C.C., provides that a person is guilty of theft by deception if he "[k]nowingly obtains the property of another by deception." For purposes of this section, "deception" is defined to include "[c]reating or rein-

forcing a false impression as to fact" and "[f]ailing to correct a false impression which the actor previously created." N.D.C.C. § 12.1-23-10(2)(a) and (c). The State asserts Burger created a false impression of fact by backdating the check to a date prior to Preston's death and reinforced that false impression by his representation through his attorney that he had in fact written and mailed the check prior to Preston's death.

[¶ 7] Burger asserts on appeal that the evidence was insufficient to support the conviction because his conduct did not constitute "deception" under N.D.C.C. § 12.1-23-10(2). Burger relies upon N.D.C.C. § 12.1-23-10(2)(g), which provides, in part:

The term "deception" does not, however, include falsifications as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed.

Burger asserts that, even if he did misrepresent the date the check was written and mailed, Gerber did not rely upon his falsification in deciding whether to pay the claim and his misrepresentation therefore had no "pecuniary significance." In support of his argument, Burger relies upon correspondence from Gerber and testimony by a Gerber official indicating Gerber denied the claim because it did not *receive* the premium while Preston was alive. He also points to testimony that Gerber offered the $3,500 settlement as a "nuisance" settlement, not because it believed there might be a valid claim under the policy. Burger thus asserts the date on the check had no "pecuniary significance" because Gerber did not rely upon it in deciding whether to pay, and therefore, as a matter of law, the backdated check did not constitute deception under N.D.C.C. § 12.1-23-10(2).

[¶ 8] Section 12.1-23-10 is virtually identical to Section 1741 of the Final Report of the National Commission on Reform of Federal Criminal Laws. *State v. Bastien*, 436 N.W.2d 229, 231 (N.D.1989). Because the statute is derived from the proposed Federal Criminal Code, we may look to the official commentaries of the proposed code for guidance in construing our corresponding stat-

utes. *E.g., State v. Carlson,* 1997 ND 7, ¶ 18, 559 N.W.2d 802; *Bastien,* 436 N.W.2d at 231.

[¶ 9] The official commentary addressing the statutory language relied upon by Burger states:

Finally, there is an exclusion from the concept of deception of a kind of seller's talk that is commonly permitted, both by custom and by current Federal case law. The typical television commercial might well provide the basis for a prosecution for theft by deception were it not for an exclusion of this sort. Hawking of wares has traditionally been permitted in exaggerated terms, and it is not the intent that a new form of theft by deception should grow out of this kind of conduct.

II Working Papers of the National Commission on Reform of Federal Criminal Laws 927 (1970) (footnote omitted). The legislative history of this provision does not demonstrate an intent to provide an exception to liability when the intended victim does not rely upon the falsification.

[¶ 10] Other provisions in the theft statutes clarify that the intended victim's failure to act in reliance upon the deception does not preclude liability for attempted theft by deception. Section 12.1–23–05(5), N.D.C.C., derived from § 1735 of the proposed federal code, provides:

Notwithstanding the provisions of subsection 3 of section 12.1–06–01, an attempt to commit a theft under this chapter is punishable equally with the completed offense when the actor has completed all of the conduct which he believes necessary on his part to complete the theft except receipt of the property.

The official commentaries clarify the intent of this provision:

The judgment is that an attempt to acquire property by deception or by threat is just as culpable as the completed act. One who mails a threatening letter demanding payment is just as culpable whether the payment is made or not: the pliability and gullibility of the victim is not a measure of the need for societal control over the defendant; success or failure is as much the result of chance in most such schemes as it is an index of the defendant's need for correctional or rehabilitative treatment.

II Working Papers at 923. The commentaries further explain that reliance by the victim upon the deceptive conduct is not required:

Finally, it should be noted that making an attempt to obtain or an attempt to deprive criminal to the same extent as the completed conduct eliminates a troublesome and irrelevant causation issue from such cases. If "obtaining" property by deception or threat were punished at one level of seriousness and the attempt at another level, the word "by" would undoubtedly introduce into the case the issue of whether the deception or threat was the operative cause of the victim's decision to part with his property. If not, then it could not be said that the property in fact was obtained "by" deception or threat. This, of course, is irrelevant to the level of culpability that the actor has manifested. Whether the victim parted with his property because of the misrepresentation or the threat or because the actor had blue eyes is not a significant measure of the extent to which he is a suitable subject for criminal sanction. In both cases, he has tried to obtain the property by deceptive or threatening practices; whether his method was successful is largely the product of chance. Making both the attempt and the completed act criminal to the same extent, therefore, will prevent cases from turning on the essentially irrelevant factor of whether the deception or the threat caused the victim to part with his property. If he made the misrepresentations for the required purpose, he is guilty of theft in either event.

II Working Papers at 924. *See also* Special Project, Hornbook to the North Dakota Criminal Code, 50 N.D.L.Rev. 639, 720 (1974).

[¶ 11] Section 12.1–23–05(5), N.D.C.C., thus expresses the Legislature's intent that the defendant's culpability is determined by his intent to obtain the property through deceptive means, and is not negated by an intended victim's failure to rely upon the deceptive conduct. The application of "pecuniary significance" urged by Burger

would effectively eviscerate N.D.C.C. § 12.1-23–05(5) and would inject into all attempted theft by deception cases the "irrelevant causation issue" rejected by the drafters of the proposed federal code.[1] *See* II Working Papers at 924. We reject Burger's argument the "pecuniary significance" provision of N.D.C.C. § 12.1–23–10(2)(g) applies under the circumstances of this case. That provision applies only to statements which could not, under the circumstances, have pecuniary significance, and does not preclude liability when the intended victim fortuitously does not rely upon the deceptive conduct. Accordingly, we reject Burger's assertion his conduct did not, as a matter of law, constitute deception under N.D.C.C. § 12.1–23–10(2).

### III

[¶ 12] Burger asserts the trial court erred in failing to instruct the jury on N.D.C.C. § 12.1–23–09(1)(a), which provides a "claim of right" defense to theft offenses:

It is a defense to a prosecution under this chapter that:

a. The actor honestly believed that he had a claim to the property or services involved which he was entitled to assert in the manner which forms the basis for the charge against him. . . .

He also asserts the court should have instructed the jury on insurance statutes which provide an insurance policy may take effect before a premium is received, citing N.D.C.C. §§ 26.1–24–01, 26.1–33–01, and 26.1–33–06(3).

[¶ 13] Burger did not raise these issues or cite these statutes to the trial court. Nor did Burger request instructions or object to the instructions given by the trial court. Our review is therefore limited to determining whether the failure to instruct on these issues constituted obvious error under N.D.R.Crim.P. 52(b). *See, e.g., State v. Olander*, 1998 ND 50, ¶ 11, 575 N.W.2d 658; *State v. Kraft*, 413 N.W.2d 303, 307 (N.D. 1987). We exercise our power to notice obvious error cautiously, and only in exceptional circumstances where the defendant has suffered serious injustice. *Olander* at ¶ 12. The burden is upon the defendant to show the alleged error was prejudicial. *Id.* at ¶ 15. In analyzing whether obvious error has occurred, we examine the entire record and the probable effect of the alleged error in light of all the evidence. *Id.* at ¶ 12.

[¶ 14] The legislative history of N.D.C.C. § 12.1–23–09(1)(a) indicates that the defendant must raise the defense through evidence at trial. Section 12.1–23–09(1)(a), N.D.C.C., is derived from § 1739(1)(a) of the proposed federal code. The official commentary to that section explains:

The proposal states that a claim of right is a "defense." Procedurally, this has the consequences, as set forth in section 103 [N.D.C.C. § 12.1–01–03] (proof and presumptions) of not requiring the prosecution to disprove the defense unless and until the issue has been raised by evidence which is sufficient to raise a reasonable doubt on the point. . . .

As a practical matter, however, the defendant would have to inject a claim of right into the case (although, of course, in some cases prosecution evidence might raise the point) in order to carry such an issue to the jury. . . . [T]he defendant will have to offer some proof of the defense in order to get an instruction and in order to get the jury to consider the matter seriously. . . .

II Working Papers at 944.

[¶ 15] Section 12.1–23–09(1)(a), N.D.C.C., provides a defense if the defendant "honestly believed that he had a claim to the property . . . which he was entitled to assert in the manner which forms the basis for the charge against him." Burger presented no evidence at trial suggesting that when he mailed the check he had an honest belief he was entitled to claim the proceeds of Preston's life insurance policy by backdating a check. Rather,

---

1. The result urged by Burger would also inject the causation issue into cases where the theft was completed. Burger relied upon testimony that Gerber's settlement offer was a "nuisance" settlement, not based upon Burger's backdating of the check. If the settlement had been completed and Burger had actually received the funds, the interpretation of "pecuniary significance" he urges in this case would also apply to excuse his conduct in those circumstances.

Burger's testimony and theory at trial was that he did not backdate the check but merely wrote it out of sequence. Burger's argument on appeal is wholly inconsistent with his theory at trial. He has not called our attention to any evidence in the record supporting the claim of right defense. Our review of the record found none. Under these circumstances, the trial court's failure to instruct on the claim of right defense was not obvious error.

[¶ 16] Furthermore, the insurance statutes relied upon by Burger do not constitute a defense to attempted theft by deception. Those statutes merely indicate that an insurance policy may take effect before a premium is paid. In light of Burger's theory at trial, those statutes were, at best, only tangentially relevant, and the court's failure to instruct on them did not rise to the level of obvious error.

[¶ 17] Viewing the alleged errors in the context of the entire record in this case, we conclude the trial court's failure to instruct on the claim of right defense and the insurance statutes did not constitute obvious error.

IV

[¶ 18] The remaining issues raised by Burger are without merit. The judgment of conviction is affirmed.

[¶ 19] VANDE WALLE, C.J., MARING, NEUMANN and SANDSTROM, JJ., concur.

