**In re MAMA'S ORIGINAL FOODS, INC., Debtor.**

**Bankruptcy No. LA 95–23023–SB.**

United States Bankruptcy Court,
C.D. California,
Los Angeles Division.

May 20, 1999.

502

George E. Schulman, Robert A. Hessling, Danning, Gill, Diamond & Kollitz, LLP, Los Angeles, CA, for trustee.

David L. Ray, Los Angeles, CA, Chapter 7 Trustee.

## OPINION AUTHORIZING TRUSTEE TO SELL PROPERTY OF ESTATE

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

The chapter 7 trustee David L. Ray brings this motion for an auction sale of personal property belonging to the estate. The court has found three deficiencies with the proposed sale procedure. First, the trustee failed to give notice to most of the creditors of the sale. Second, the trustee failed to advertise the sale. Third, the trustee tried to impose improper conditions on the auction process. The court has required a cure of these deficiencies before the sale can proceed.

## II. FACTS

Prior to filing its chapter 11 case in 1995, the debtor operated two restaurants under the name Mama's Original Pizza & Pasta. After operating as a debtor in possession for two months, the case was converted to a liquidation under chapter 7. The trustee now brings a motion to sell the restaurant equipment and inventory, and the debtor's name and trademark. With the motion, the trustee presents an offer of $22,462.33 from Mama's Foods West, Inc., which is operated by the debtor's former president.

Anticipating other possible bidders, the trustee's motion announced the right to overbid. However, it stated that any overbid must exceed $25,000, and must be accompanied by a cashiers check for the entire purchase price.

The trustee offered no evidence that the property to be sold had been advertised or otherwise marketed. Indeed, it appears that the only effort of the trustee to market this property was to give notice of the motion to two creditors. Although the creditor's list indicates that there are some 49 creditors, the trustee gave notice of this sale only to two taxing authorities (the IRS and the California Employment Development Department), the least likely creditors to be interested in bidding on the assets.

The trustee claims that the purchase price of $22,462.33 is fair, because an independent appraisal shows that the property is worth $11,000, and the debtor's schedules valued the equipment and inventory at $7,500. The trustee has also submitted an auctioneer's liquidation estimate for the furniture and fixtures, which values them at $7573.

## III. DISCUSSION

The court finds three deficiencies in the trustee's procedures concerning this sale. First, the trustee did not give the required notice to creditors. Second, he did not market the property adequately. Third, in his notice the trustee tried to impose improper conditions on the sale procedure.

### A. Notice to Creditors

 The trustee did not give the required notice to creditors of the sale of the property here at issue. F.R.B.P.2002(a)(2) requires that the notice of a sale of property of the estate, not in the ordinary course of business, be given to all creditors. Pursuant to this motion, the trustee seeks to sell essentially all the debtor's assets, in a sale that is manifestly not in the ordinary course of business. However, the trustee gave notice only to two of some 49 creditors. This procedure does not comply with the rule. The trustee must give notice of the sale to all of the debtor's creditors. A sale cannot proceed until appropriate notice is given.[1]

### B. Marketing of the Assets

 A trustee has a duty to "collect and reduce to money the property of the estate...." 11 U.S.C. § 704(1). In performing these obligations, the trustee has a duty to exercise the same measure of care and diligence that an ordinary prudent person would exercise under similar circumstances. *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1357 (9th Cir.1983).

 In selling property of the estate, a trustee is required to market the property in the manner that is customary for property of the kind at issue. If there is a recognized market for the sale of the property, the trustee is required to sell the property in the recognized market.[2] In an

---

1. Further, Local Rule 2002–2(3) requires that notices to the Internal Revenue Service be sent to its Los Angeles address at 300 North Los Angeles Street, and not to the Woodland Hills address listed in the proof of service.

The sale cannot proceed until service is made on the IRS at the appropriate address.

2. If there is more than one recognized market for property of the kind at issue, the trustee is normally permitted to use business judgment

appropriate case, the court may authorize the trustee to sell the property in a different manner. Generally, however, the best way to determine the market value of property is to expose the property to the marketplace. *Bank of America NT & SA v. 203 North LaSalle Street Partnership,* — U.S. ——, 119 S.Ct. 1411, 1423, 143 L.Ed.2d 607 (1999).

■ The market value of property is the highest price a willing buyer would pay and a willing seller would accept, both being fully informed, after the property has been exposed to the market for a reasonable period of time. BLACK'S LAW DICTIONARY 971 (6th ed.1990). 11. U.S.C. § 704(1) makes the trustee a willing seller. Thus the market value of property that the trustee offers for sale is the highest price that an informed buyer is willing to pay after the property has been appropriately exposed to the marketplace for a reasonable period of time.

■ For certain kinds of property, there is a recognized market and an established value, so that the trustee may market the property by finding a purchaser willing to pay the market price. For example, shares of stock in a publicly listed corporation may be sold to a stock broker at the listed price. Similarly, the Kelly Blue Book establishes the market value for automobiles: a sale of an automobile at the Kelly Blue Book price[3] is presumptively at the market price. The sale of property through an auctioneer is also presumptively at a market price, because the auctioneer makes a market for the property to be sold.

■ Absent a recognized market with established prices, a trustee is required to advertise the property to be sold. The method of advertising must be whatever a prudent seller would choose for selling property of the kind at issue. For the restaurant equipment in this case, for

example, a prudent seller typically advertises the property for sale on the internet and by newspaper.

■ It is important to distinguish the advertising function from the function of giving notice to creditors of a sale under Rule 2002(a)(2). The court frequently receives applications from trustees to authorize the sale of property of the estate, where the only advertising of the property is the notice to the creditors of the sale. Giving notice to creditors is not a substitute for advertising.

■ Frequently it is useful to present an appraisal to the court to assist in the determination of the value of assets. The normal function of an appraisal is to determine the value of property that is *not* being sold. Where the property is being sold, on the other hand, an appraisal is not a substitute for exposing the property to the marketplace. The main function of an appraisal in this context is to test whether the property has been adequately marketed, or whether further marketing is needed to obtain a fair market price.

■ The debtor's statement of the value of property in the debtor's schedules may also have some probative weight as to the value of the property. However, such a statement is likewise no substitute for marketing the property. Like an appraisal, the debtor's statement helps to test whether the marketing has been adequate.

The court recognizes that the decision to advertise is always tempered by practical concerns. For example, the sale of property with minimal value may not make advertising financially feasible. However, that is not the situation before the court in this case. Therefore, the court finds that a prudent person would advertise the proposed sale. The trustee must do the same.

in choosing the appropriate market for selling the property.

3. In a typical case the trustee may properly sell an automobile at the wholesale price as listed in the Kelly Blue Book.

## C. Bidding Procedure

█ The trustee in this case chose to sell the property through an auction process. Rather than hire an auctioneer, however, he requested that the court conduct the auction. This is normally an appropriate procedure.

█ An auction sale requires that interested parties be given the opportunity to bid, and that the sale go to the bidder offering the highest price. This requires a fair bidding process, where each potential bidder is given an adequate opportunity to bid.

In this auction sale, the trustee came to court with a bid in hand of $22,462.33. Overbidders thus would be required to make a higher bid to obtain the property.

█ How much higher an overbid must be is a matter to be determined by the court. A minimum overbid that is too small unduly delays the proceedings. A minimum overbid that is too high, in contrast, discourages competition. The appropriate level for a minimum overbid is the minimum level that is high enough to move the procedure along toward achieving the highest bid.

█ In this case, the trustee's notice specified that the minimum overbid must be $25,000. This notice was improper in two respects. First, by specifying the minimum overbid, the trustee attempted to appropriate a decision that belongs to the court. Second, the minimum overbid of 11.3% was excessive. It appears to have been chosen to chill the bidding and to discourage overbids, rather than to encourage bidding and to achieve the highest sales price. The court finds that an appropriate overbid in this situation is $500.

Sometimes a prospective purchaser will try to negotiate with a trustee for a high minimum overbid, in an attempt to chill the bidding and to stack the deck in favor of its own bid. Such a procedure is improper. This is an additional reason that a determination of the minimum overbid is a decision for the court, and not for the trustee.

█ The trustee has tried to impose a further improper condition on the sale. His notice announced a requirement that the winning bidder would be required to present a cashiers check at the time of the sale for the entire purchase price. This is an impossible condition to meet, because a bidder cannot know how much the price is until the bidding is closed. The standard procedure is to give the purchaser a reasonable time to pay the cash price and to close the deal. How much time is reasonable turns on the facts of the case, and is a determination for the court to make. In this case, 24 or 48 hours would be an appropriate time to deliver the purchase price and close the sale.

## IV. CONCLUSION

The court concludes that the trustee's motion could not be approved in its original form. The notice to creditors was insufficient. In addition, the trustee had not advertised the sale, and he had given notice of an improper overbid procedure.

The court continued the hearing on the sale for the trustee to cure these defects. At the continued hearing the trustee provided evidence that notice (without an overbid limitation) was provided to all creditors, and that he had advertised the property on his internet website and in the Los Angeles Times. Because no other prospective bidders appeared at the hearing, the court has approved the sale.