2000 ND 28

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**LeMoyne JENSEN a/k/a Lee Jensen, Defendant and Appellant.**

**No. 990154.**

Supreme Court of North Dakota.

Feb. 22, 2000.

Marina Spahr, State's Attorney, Carrington, N.D., for plaintiff and appellee.

Faye A. Jasmer, Grand Forks, N.D., for defendant and appellant.

NEUMANN, Justice.

[¶ 1] LeMoyne Jensen appealed from judgments of conviction upon jury verdicts finding him guilty of reckless endangerment, terrorizing, and gross sexual imposition. We hold the trial court did not commit reversible error in ruling on evidence relating to prior sexual conduct, and we affirm.

I.

[¶ 2] Jensen and the alleged victim ("Alice Smith," a pseudonym) were involved in a personal relationship for about four years and cohabited on a farmstead near Cooperstown. On the evening of the alleged crimes, they watched a movie together in their home and then had intercourse on the floor in the living room. Jensen testified they had consensual sex, but Smith testified she acquiesced only because she was afraid of Jensen. Smith testified that after having sex in the living room she went upstairs to bed. She said Jensen followed later and forced her to have anal intercourse, during which he began yelling and hitting her. She testified she began crying and Jensen knocked her off the bed and kicked her with his bare feet. She also testified Jensen threatened to hit her with a stick and repeatedly chambered a shotgun while standing at the foot of the bed, which made her fear he was going to kill both of them. Jensen eventually went downstairs to sleep. The next morning, Smith left the farmstead with neighbors and reported the incident to the authorities.

[¶ 3] Jensen testified the sex between himself and Smith that evening was entirely consensual. He admitted he "spanked" Smith, but claims it was all part of rough sex play and Smith consented to it. He also admitted striking and kicking Smith that evening out of frustration, but he claimed he never threatened her with a stick or gun. He testified he grabbed and removed a gun that was near Smith, be-

cause Smith had previously shot out windows with it and he thought she might use it again.

[¶ 4] The State filed three criminal counts charging Jensen with class C reckless endangerment, class C felony aggravated assault, and class A felony gross sexual imposition. A jury found Jensen guilty of reckless endangerment, terrorizing, and gross sexual imposition. Judgments of conviction were entered, and Jensen was sentenced by the court to concurrent terms of five years each on the terrorizing and reckless endangerment convictions and 12 years, with five suspended, together with a $500 fine and a $25 assessment to the victim witness fund, for the gross sexual imposition conviction.

## II.

[¶ 5] On appeal, Jensen claims he was denied constitutional due process and confrontation rights when the court refused to allow him to introduce evidence of prior sexual activity between himself and Smith after the State had "opened the door" to such evidence. Upon careful review of the record, we are not convinced the trial court committed reversible error in its rulings on prior sexual conduct evidence.

[¶ 6] The admission of an alleged victim's sexual behavior or sexual predisposition in criminal proceedings is governed by N.D.R.Ev. 412, which provides:

(a) *Evidence Generally Inadmissible.* The following evidence is not admissible in any criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):

(1) evidence offered to prove that any alleged victim engaged in other sexual behavior; and

(2) evidence offered to prove any alleged victim's sexual predisposition.

(b) *Exceptions.* In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:

(1) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;

(2) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct, offered by the accused to prove consent or by the prosecution; and

(3) evidence the exclusion of which would violate the constitutional rights of the defendant.

(c) *Procedure to Determine Admissibility.*

(1) A party intending to offer evidence under subdivision (b) must:

(A) file a written motion at least 14 days before trial specifically describing the evidence and stating the purpose for which it is offered unless the court, for good cause requires a different time for filing or permits filing during trial; and

(B) serve the motion on all parties and notify the alleged victim or, when appropriate, the alleged victim's guardian or representative.

(2) Before admitting evidence under this rule, the court must conduct a hearing in camera and afford the victim and parties a right to attend and be heard. The motion, related papers, and the record of the hearing must be sealed and remain under seal unless the court orders otherwise.

Under this rule evidence that an alleged victim of sexual misconduct engaged in other sexual behavior or evidence of the victim's sexual predisposition is not admissible. The rule provides limited exceptions to the general rule of inadmissibility, and under N.D.R.Ev. 412(b)(2) evidence of specific instances of sexual behavior between the alleged victim and the accused, offered by the accused to prove consent or offered by the prosecution, can be admissible. However, under N.D.R.Ev. 412(c) a party intending to use such evidence must file a written motion at least 14 days be-

fore trial, and the court must conduct an *in camera* hearing on the motion. For good cause shown the court can allow a different time for filing the motion.

[¶ 7] Neither the State nor Jensen filed a written motion to admit evidence covered under N.D.R.Ev. 412. However, before the trial started, the State made a motion *in limine* to preclude the defense from offering any evidence regarding prior sexual activity between Jensen and Smith. Jensen's attorney argued prior sexual activity between Jensen and Smith constituted relevant evidence for the jury to consider in determining whether Smith consented to the sexual activity on the night of the alleged crimes. The trial court reserved its ruling until seeing how the testimony developed in open court.

[¶ 8] At trial, Smith gave the following testimony which both parties treated as relating to specific instances of prior sexual behavior[1] between her and the defendant:

A. I said that I did not feel like it. I did not want to. And he said, come on [Alice], and I pretty much knew I better do it.

Q. Okay, how do you know that?

A. Because of the past, I just know that he would take it anyway.

Q. Okay, and what do you mean because of the past, he will take it anyway?

A. Because it has happened before.

Q. What has happened before?

A. Where he has wanted sex and I did not.

Q. And?

A. And he took it anyway.

. . . .

A. There has been times before where he has just totally ripped off my clothes or has just—he gets mad. He has bit me before. He will, he will do it, too, take it. He always says that he is

the one that is being rejected and he gets very mad. And that, at the least, is what I could do in a relationship, is do that.

. . . .

Q. Just to make sure that I have heard you correctly, did you say if you say or do anything, he will lose his erection?

A. That is what ends up happening, so I have learned to be quiet.

Q. So that what is [sic] he was doing or what you think that he was intending when he was telling you to not move and keep your knees together and those things?

A. Yes, and like the angrier that he is, the more angrier the he—basically, every time he is angry, he can climax.

. . . .

Q. Are you implying that he needs to be angry or—

A. I don't know, it seems like it.

Q. Okay, from your past experience?

A. Yes.

This evidence was introduced by the State without any objection by the defense. Counsel for the defendant explains in her appellate brief ". . . . Defendant did not object to the prosecution's line of questioning because Defendant assumed that the prosecution had now 'opened the door' on specific instances of prior sexual conduct between the Defendant and the alleged victim by making the issue of consent foremost in its case."

[¶ 9] Later in the trial, the defendant attempted to admit evidence of anal intercourse and of spanking during prior episodes of sex between himself and Smith. The State objected to this evidence on the ground the defendant had not complied with the notice requirements of N.D.R.Ev. 412(c). The trial court sustained the objections and refused to admit the evidence. Jensen claims the trial court committed

---

1. It is an arguable question whether any of the testimony introduced by the State constituted "specific instances" of prior sexual be-havior so as to fall within the category of evidence covered by N.D.R.Ev. 412(b)(2).

reversible error by refusing to allow this evidence after the State had opened the door to evidence of prior sexual activity between Jensen and Smith.

[¶ 10] The trial court has broad discretion in evidentiary matters and, absent an abuse of discretion, we will not reverse its decision. *State v. Leinen*, 1999 ND 138, ¶ 7, 598 N.W.2d 102. Failure to provide written notice of intent to offer evidence, as required by N.D.R.Ev. 412(c), is reason alone for the court to deny admissibility of the evidence. *See United States v. Eagle Thunder*, 893 F.2d 950, 954 (8th Cir.1990) (interpreting F.R.Ev. 412); *see also U.S. v. Boyles*, 57 F.3d 535, 548 (7th Cir.1995) (court's failure to rule on admission of evidence under Rule 412 not error where the defendant did not file the required notice and did not make a proper offer of proof).

[¶ 11] Upon a showing of "good cause" the court can allow the late filing of a motion to admit evidence under N.D.R.Ev. 412. However, defense counsel has offered no explanation or reason for failing to comply with the 14–day notice requirement. Given Jensen's argument in response to the State's motion *in limine*, clearly the possibility of offering evidence of prior sexual behavior was anticipated by the defense prior to trial. The defendant's only argument is that the State "opened the door" to evidence of sexual behavior by Smith when it introduced such evidence without making its own motion to admit under N.D.R.Ev. 412. We disagree with the defendant's contention that the State opened the door to admitting evidence of prior anal intercourse or rough sex play between the defendant and the victim. The evidence introduced by the State did not involve any testimony relating to such matters. The evidence introduced by the State opened the door in a very limited sense only to rebuttal evidence about whether the defendant had on prior occasions forced the victim to have sex or whether he needed to express anger to reach a climax.

[¶ 12] In support of his argument, Jensen relies on *Government of the Virgin Islands v. Jacobs*, 634 F.Supp. 933 (D.Virgin Islands 1986). Jacobs was charged with numerous counts of first degree rape of his live-in girlfriend's 12–year–old daughter. During the prosecution's case-in-chief, the victim testified she never had sexual relations with anyone other than the defendant. The defendant argued his Sixth Amendment confrontation rights entitled him to impeach the victim's testimony with evidence the victim had previously engaged in an incestuous relationship with a brother. The court agreed, stating:

> When the accused makes a showing of proof that the victim has perjured herself or which otherwise significantly undermines her credibility, the protective policies of Rule 412 must give way to the accused's right to confrontation. A contrary view would provide a witness with an impermeable shield against contradiction of perjured testimony.... We hold, therefore, that under these circumstances the accused may cross-examine the complaining witness on prior specific sexual acts provided that the probative value of the proffered proof is found to outweigh the resulting prejudice.
>
> . . . .
>
> We conclude that Rule 412's constitutional exception embraces the accused's right to confront his victim with impeachment evidence consisting of prior sexual conduct where the Government first opens the door on this line of cross-examination.

*Jacobs*, 634 F.Supp. at 938 and 940.

[¶ 13] The facts in *Jacobs* are clearly distinguishable from this case. Jacobs argued the victim had perjured herself, and he made a showing of proof the victim had intercourse with someone else although she testified she had not had sex with anyone other than the defendant. Under those circumstances, the court concluded the prosecution opened the door to rebut-

tal evidence the victim had previously engaged in sex with other persons.

[¶ 14] Jensen claims the State opened the door to evidence about prior anal sex and spanking or rough sex play between himself and the victim, but neither the victim nor any other witness for the State testified about such matters. Jensen has not argued that Smith perjured herself. Although the court in *Jacobs* applied an "open door" rule, it was not opened nearly so wide as Jensen urges. We conclude it was not an abuse of discretion for the trial court to refuse to allow Jensen to admit evidence of prior anal intercourse and sex play between himself and Smith, absent compliance with the N.D.R.Ev. 412 notice requirement. The State's very limited introduction of evidence, without objection, regarding prior sex between the defendant and the victim simply did not open the door for the evidence offered by Jensen.

### III.

[¶ 15] During Jensen's direct testimony, the State objected to defense counsel asking Jensen whether he had previously forced intercourse upon Smith:

> Q. Now, if you—is there any time that you forced yourself, that you had intercourse with [Alice] when she didn't want it?
>
> MS. SPAHR: Your Honor, I object.
>
> THE COURT: Are you referring to this evening, because we're going to have to limit it to November 1st or October 31st.
>
> MS. JASMER: October 31st, okay. I can withdraw that then, Your Honor.

Later, still during Jensen's direct examination, defense counsel asked a similar question:

> Q. Did you hit her to force her to conform to the sex act?
>
> A. No.
>
> Q. Is it something you had done before?
>
> A. Yes.
>
> MS. SPAHR: Your Honor, I object.

THE COURT: The Court will sustain the objection. Any prior conduct between the parties is not relevant and I'll ask the jury to disregard it.

[¶ 16] Jensen should have been allowed to testify whether he had previously forced sex upon Smith, to rebut the State's evidence that he had. The State's introduction of testimony by Smith that Jensen had previously forced sex upon her did, in our view, open the door to rebuttal evidence by Jensen that he had not previously forced sex upon her. When, however, the court indicated it would sustain the State's objection to this testimony defense counsel withdrew the question. Shortly thereafter, she asked the question in a slightly different way. Jensen answered before the State raised its objection to the question. His answer is puzzling. Defense counsel's question may be ambiguous, but Jensen seems to say that in the past he had hit Smith to force her to have sex. When the court sustained the objection, Jensen had already answered with an apparent admission against his own interest.

■ [¶ 17] Error cannot be predicated upon a ruling which excludes evidence unless the party offering the evidence makes an offer of proof, or the substance of the evidence is apparent from the context in which the question was asked. N.D.R.Ev. 103. Jensen's counsel did not attempt to make an offer of proof, and, in view of Jensen's puzzling answer, the trial court could not have known whether overruling the objection would have resulted in testimony favorable to Jensen. Under these circumstances, absent an offer of proof by Jensen showing what the substance of the excluded testimony would have been, Jensen has failed to properly preserve the issue, and we are unable to conclude the court's exclusion of the testimony was prejudicial to Jensen. *See Wagner v. Peterson*, 430 N.W.2d 331, 332 (N.D.1988). It is a matter upon which we will not speculate. *Id.* at 333.

■ [¶ 18] Under N.D.R.Crim.P. 52(b) obvious errors or defects affecting

substantial rights may be noticed on appeal even though they were not properly brought to the trial court's attention. We exercise our power to notice obvious error only in exceptional circumstances where the defendant has suffered serious injustice, and the burden is upon the defendant to show the alleged error was prejudicial. *State v. Burger*, 1999 ND 30, ¶ 13, 590 N.W.2d 197. While the court should have allowed Jensen to rebut Smith's testimony that he previously forced her to have sex, Jensen simply has failed to demonstrate he suffered serious injustice or was prejudiced by the court's rulings.

[¶ 19] There was substantial evidence for the jury to find Jensen had forced sex with Smith on the night of the alleged crime. Smith testified that, after having intercourse in the living room, Jensen told her "[Y]ou hated it that much, that it hurt you that much?" She said Jensen was very agitated and when he eventually followed her upstairs into the bed he again wanted to have sex. Smith answered, "[N]o, Lee, I don't want you." He responded, "[W]hy not [Alice]? Come on." She again responded, "[N]o, Lee, I don't want to. I am tired." Smith testified she said, "no" three or four times, but Jensen was persistent. She eventually got on her knees, put her face in the pillow, and started to cry. Jensen then forcibly entered her rectum. Smith testified Jensen entered her very hard and it hurt her so much she "just bit down on the pillow." She said she arched her back because of the pain, and he yelled at her to stop arching her back and then began hitting her with his hand. Smith testified when Jensen finished with her he hit her in the back of the head. She fell to the ground and hit her head on the back of the bed. When Smith expressed her anger at Jensen, he kicked her while she lay on the floor. Smith then got back up on the bed where Jensen "cannot kick so good." Smith testified she later felt threatened by Jensen when he threw a stick and chambered a shotgun at the foot of the bed.

[¶ 20] Smith's testimony is corroborated by Dr. Barry Carr, a physician at the Cooperstown Medical Center. He examined Smith and found evidence of "some relatively blunt trauma to the area of the head" and of "some object being forcibly, without lubrication" inserted into the anus, causing abrasion and bruising. Rhonda Dahl, a neighbor who picked up Smith the morning after the incident, testified she and her husband went to Jensen and Smith's home after church and found Smith lying on the couch looking like "she was really in a lot of pain." Dahl testified she could tell Smith had been doing a lot of crying and she "looked terrible." Dahl testified Smith was terribly upset and crying when she told her Jensen had on the previous evening humiliated her, forced her to have sex, and hit and terrorized her. Rhonda Dahl's husband, Steve, also testified. While Rhonda was talking with Smith in the house, Steve Dahl was outside talking with Jensen. When they came into the house, Smith told them about Jensen threatening her the prior evening with a stick and a gun and "dragging her by the hair." Steve Dahl testified Smith looked "like she had been beaten up." When Smith finished talking with them, Rhonda Dahl asked Jensen "[D]id these things happen?" Jensen responded, "[W]ell, yes."

[¶ 21] Upon carefully reviewing the record in this case, we conclude the trial court did not commit reversible error in its evidentiary rulings regarding prior sexual conduct. We further conclude the defendant has not preserved any error upon which to predicate an argument his constitutional rights to due process and confrontation were violated.

[¶ 22] Judgments affirmed.

[¶ 23] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.