2000 ND 202

STATE of North Dakota, Plaintiff and Appellee,

v.

Brian J. ERICKSTAD, Defendant and Appellant.

State of North Dakota, Plaintiff and Appellee,

v.

Robert R. Lawrence, Defendant and Appellant.

Nos. 20000050–20000053.

Supreme Court of North Dakota.

Dec. 7, 2000.

Bruce A. Romanick, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Paul Henry Myerchin, Bormann Law Office, Bismarck, ND, for defendant and appellant Brian J. Erickstad. Appearance by Clark J. Bormann.

Robert Wade Martin (submitted on briefs), Bismarck, ND, for defendant and appellant Robert R. Lawrence.

KAPSNER, Justice.

[¶ 1] Brian J. Erickstad and Robert Lawrence appealed from judgments of conviction of murder, conspiracy to commit murder, and theft of property. We affirm, concluding the trial court did not err in refusing a change of venue, the defendants failed to show obvious error in the jury instructions, and the trial court did not err in admitting evidence of the value of a stolen pickup.

I

[¶ 2] On September 18, 1998, the bodies of Gordon and Barbara Erickstad were found in a wooded area near Selfridge, North Dakota. Both had sustained multiple stab wounds. Earlier that day, police had searched the Erickstads' Bismarck home and found blood throughout the house and knives in the kitchen sink. The Erickstads' vehicles, a 1998 Chevrolet pickup and 1990 Cadillac, were missing. The 1990 Cadillac was later found abandoned in a field in Cass County.

[¶ 3] The police investigation focused upon the Erickstads' son, Brian, and his friend, Robert Lawrence. On September 20, 1998, Erickstad and Lawrence were apprehended in Texas in the 1998 Chevrolet pickup. They were extradited to North Dakota, where each was charged with two counts of murder, one count of conspiracy to commit murder, one count of class B felony theft of property, and two counts of class C felony theft of property.

[¶ 4] Lawrence filed a motion for a change of venue on June 21, 1999, citing the extensive publicity in the Bismarck area regarding the murders. Erickstad joined the motion. The trial court denied the motion for change of venue in a written order dated July 30, 1999.

[¶ 5] A jury trial was held October 11–18, 1999. The jury found Erickstad and Lawrence guilty on all counts. Judgments of conviction were entered, and Erickstad and Lawrence appealed. Their appeals have been consolidated by stipulation.

II

[¶ 6] The defendants argue the trial court erred in denying their pretrial motion for a change of venue based upon the publicity of the case in the Bismarck area. Rule 21(a), N.D.R.Crim.P., governs change of venue for prejudice:

> The court upon motion of the defendant shall transfer the proceeding as to that defendant to another county or municipality whether or not that county or municipality is specified in the defendant's motion if the court is satisfied that there exists in the county or municipality in which the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial.

[¶ 7] A motion for change of venue is addressed to the sound discretion of the trial court, and we will not reverse the trial court's decision absent a showing of abuse of discretion prejudicial to the defendant. *State v. Ellis*, 2000 ND 177, ¶ 10, 617 N.W.2d 472; *State v. Smaage*, 547 N.W.2d 916, 918 (N.D.1996); *State v. Breding*, 526 N.W.2d 465, 468 (N.D.1995); *State v. Norman*, 507 N.W.2d 522, 526 (N.D.1993). A defendant seeking a change of venue under N.D.R.Crim.P. 21(a) bears the burden of demonstrating a reasonable likelihood of prejudice so pervasive that a fair and impartial jury could not be found. *Ellis*, at ¶ 11; *Smaage*, 547 N.W.2d at 918; *State v. Austin*, 520 N.W.2d 564, 566 (N.D. 1994); N.D.R.Crim.P. 21(a), Explanatory Note. The ultimate question for the trial court to decide is whether it is impossible to select a fair and impartial jury, and relief should be granted only in exceptional cases. *Ellis*, at ¶ 11; *Smaage*, 547 N.W.2d at 919; *Austin*, 520 N.W.2d at 566; N.D.R.Crim.P. 21(a), Explanatory Note.

[¶ 8] The defendants argue that the sheer number of news stories about this case, and the many factual details which were reported, establish that "[d]amage to the presumption of innocence is a foregone conclusion under such circumstances."

The defendants' argument demonstrates a misunderstanding of the burden they bear in seeking a change of venue. In considering whether pretrial publicity warrants a change of venue, it is the prejudicial nature of the publicity, not its quantity, which is paramount:

Publicity per se is not necessarily prejudicial or damaging to a criminal defendant. . . . Before a change of venue because of pretrial publicity is proper, it must be shown that the publicity was in fact prejudicial to the defendant. It is therefore not the quantity of media coverage which controls a change of venue motion, but rather the likelihood that any degree of adversity toward the defendant which was caused by that publicity will prevent him from receiving a fair trial.

*Austin,* 520 N.W.2d at 567 (quoting *Houle v. North Dakota District Court,* 293 N.W.2d 872, 874 (N.D.1980)).

 [¶ 9] Mere quantity of media coverage is not the focus; rather, the defendants must show there was improperly prejudicial publicity which would have caused such bias against them that it would have been impossible to select a fair and impartial jury. There is no showing in the record that the media coverage disseminated inadmissible, illegally obtained, or otherwise prejudicial information, or that the coverage was sensationalized, inflammatory, or biased. *See Breding,* 526 N.W.2d at 468; *Austin,* 520 N.W.2d at 567; *State v. Purdy,* 491 N.W.2d 402, 407 (N.D. 1992). Nor did the defendants submit qualified public opinion surveys, other opinion testimony, or any other evidence demonstrating community bias caused by the media coverage. *Austin,* 520 N.W.2d at 567.

 [¶ 10] The defendants' motion for change of venue was made in June 1999. The trial court denied the motion in July 1999, and trial was held in October 1999. The defendants did not renew their motion at the time of trial. Voir dire proceeded and a jury was selected with little difficulty. Although in exceptional cases prejudice to the defendant caused by pretrial publicity may be so obvious that a change of venue should be ordered immediately, a change of venue is generally inappropriate before voir dire. *Ellis,* 2000 ND 177, ¶¶ 10, 14, 617 N.W.2d 472; *Breding,* 526 N.W.2d at 468; *Norman,* 507 N.W.2d at 526; N.D.R.Crim.P. 21(a), Explanatory Note. A defendant believing an impartial jury cannot be selected, based upon comments by potential jurors during voir dire, must renew a motion for change of venue at that time. *Ellis,* at ¶ 14. The defendants have not drawn our attention to any evidence from the voir dire which demonstrates it was difficult or impossible to seat a jury in this case, and they did not renew their motion for change of venue at that time.

 [¶ 11] We will reverse a trial court's decision denying a motion to change venue only when the prejudice to the defendant is so palpable and clear from the record that it was arbitrary, unreasonable, and capricious to conclude that a fair and impartial jury could be impaneled. *Austin,* 520 N.W.2d at 568. All other cases fall within the broad spectrum of the trial court's discretion. *Id.* The defendants have failed to establish the pretrial publicity in this case created bias and prejudice in the community making it impossible to select a fair and impartial jury. We therefore conclude the trial court did not abuse its discretion when it denied the motions for change of venue.

### III

[¶ 12] The defendants argue the trial court erred in instructing the jury on the law of voluntary intoxication.

[¶ 13] Prior to trial, the parties each filed written requests for jury instructions. Erickstad's counsel requested that the court give the pattern jury instruction entitled "Effect of Intoxication on Culpabili-

ty," N.D.J.I.—Criminal 2042.[1] The trial court accordingly gave the following instruction:

### EFFECT OF INTOXICATION ON CULPABILITY

The culpability required as an essential element of the crimes with which the defendants are charged is that the defendants acted intentionally or knowingly or under circumstances manifesting extreme indifference to the value of human life.

If the evidence shows that a defendant was intoxicated at the time of committing the alleged offense, you may consider that fact in deciding whether he did so with the required culpability.

[¶ 14] A few days prior to the end of trial, the State made a written request for several additional instructions, including N.D.J.I.—Criminal 2043.[2] The court gave the following instruction, based upon N.D.J.I.—Criminal 2043:

### EFFECT OF VOLUNTARY INTOXICATION

The fact that the defendant was voluntarily intoxicated at the time he committed the alleged offense does not relieve him of criminal responsibility for the crime.

[¶ 15] The defendants argue this instruction misstates the law because it says voluntary intoxication "does not relieve [a defendant] of criminal responsibility," but the statute on which the instruction is based says "[i]ntoxication is not a defense to a criminal charge." *See* N.D.C.C. § 12.1–04–02(1). The defendants also argue on appeal that giving both of the instructions on intoxication may have misled the jury, because one says voluntary intoxication does not relieve criminal responsibility, while the other says the jury may consider intoxication in determining whether a defendant acted with the requi-

site culpability. The defendants have provided on appeal a suggested instruction which, they allege, would have cleared up any confusion caused by giving the two instructions.

### A

[¶ 16] Jury instructions must correctly and adequately inform the jury of the applicable law, and must not mislead or confuse the jury. *State v. Carlson*, 1997 ND 7, ¶ 16, 559 N.W.2d 802; *State v. Barnes*, 551 N.W.2d 279, 281 (N.D.1996). This Court reviews the instructions as a whole to determine whether they adequately and correctly inform the jury of the applicable law, even though part of the instructions standing alone may be insufficient or erroneous. *State v. Schumaier*, 1999 ND 239, ¶ 9, 603 N.W.2d 882.

[¶ 17] Although the trial court is initially responsible for correctly instructing the jury on the law of the case, both the prosecution and defense have the responsibility to request and object to specific instructions. *State v. Mathre*, 1999 ND 224, ¶ 6, 603 N.W.2d 173; *City of Bismarck v. Towne*, 1999 ND 49, ¶ 6 n. 2, 590 N.W.2d 893. In order to preserve the issue for appellate review under N.D.R.Crim.P. 30(c), a party must specifically object to a jury instruction at trial, and must distinctly state the ground for objection. *See, e.g., Mathre*, at ¶ 5; *State v. Olander*, 1998 ND 50, ¶¶ 10–11, 575 N.W.2d 658; *State v. Gates*, 325 N.W.2d 166, 167 (N.D.1982). Under the similar federal rule, the United States Supreme Court has held a party generally may not assign error to a jury instruction if he fails to timely object, or fails to state distinctly the matter to which he objects and the grounds of the objection. *Jones v. United States*, 527 U.S. 373, 387, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). The purpose of the rule is to enable a trial court to correct any mistakes in the instructions, thereby

---

1. This instruction is now found at N.D.J.I.—Criminal K–3.08.

2. This instruction is now found at N.D.J.I.—Criminal K–3.10.

avoiding the burden of an unnecessary retrial. *Id.* at 387–88, 119 S.Ct. 2090.

[¶ 18] Similarly, if a defendant desires a more comprehensive instruction on any point of law than what the trial court has indicated it will give, the defendant must request specific written instructions, and if the defendant fails to do so he cannot predicate error upon omissions in the charge given. *Barnes,* 551 N.W.2d at 281; *State v. Olson,* 356 N.W.2d 110, 114 (N.D.1984). When a defendant fails to properly object to a proposed instruction, or fails to specifically request an instruction or object to omission of an instruction, the issue is not adequately preserved for appellate review and our inquiry is limited under N.D.R.Crim.P. 52(b) to whether the jury instructions constitute obvious error affecting substantial rights. *Mathre,* 1999 ND 224, ¶ 5, 603 N.W.2d 173; *Olander,* 1998 ND 50, ¶ 11, 575 N.W.2d 658; *Barnes,* 551 N.W.2d at 281–82.

[¶ 19] The defendants did not specifically object to the voluntary intoxication instructions, either at the time the State requested the instruction or during the charging conference. During a conference the last day of trial, the attorneys and the court discussed the State's numerous additional requested instructions. The defendants' attorneys [3] did not specifically object to the voluntary intoxication instruction requested by the State. They merely raised a general objection to all of the new instructions, stating they were "preserving the right to argue about those issues later," and were objecting to "those changes." At the subsequent charging conference, the defendants did not raise any objection to the intoxication instructions.

[¶ 20] The defendants never argued to the trial court that the State's requested instruction misstated the law of voluntary intoxication. Nor did the defendants argue to the trial court that the two intoxication instructions, given together, might confuse the jury. The defendants did not request any additional instructions, such as the one they propose on appeal, to clarify the law on this point. Under these circumstances, the defendants have failed to preserve the issues for appeal, and our review is limited to determining whether the instructions as given constitute obvious error under N.D.R.Crim.P. 52(b).

B

[¶ 21] Rule 52(b), N.D.R.Crim.P., allows this Court to correct obvious errors or defects affecting substantial rights even if they were not brought to the attention of the trial court. We exercise our power to notice obvious error cautiously, and only in exceptional circumstances where the defendant has suffered serious injustice. *State v. Entzi,* 2000 ND 148, ¶ 12, 615 N.W.2d 145; *State v. Burke,* 2000 ND 25, ¶ 16, 606 N.W.2d 108; *State v. Strutz,* 2000 ND 22, ¶ 10, 606 N.W.2d 886. We have very rarely found obvious error under N.D.R.Crim.P. 52(b). *Mathre,* 1999 ND 224, ¶ 5, 603 N.W.2d 173; *Olander,* 1998 ND 50, ¶ 12, 575 N.W.2d 658. In applying obvious error analysis under the corresponding federal rule, the United States Supreme Court has noted: "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Jones,* 527 U.S. at 389, 119 S.Ct. 2090 (quoting *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977)).

[¶ 22] In analyzing whether obvious error has occurred, we examine the entire record and the probable effect of the alleged error in light of all the evidence. *Burke,* 2000 ND 25, ¶ 16, 606 N.W.2d 108; *Strutz,* 2000 ND 22, ¶ 20, 606 N.W.2d 886; *State v. Burger,* 1999 ND 30, ¶ 13, 590 N.W.2d 197. In order to affect "substantial rights," an error must have been prejudicial, or affected the outcome of the proceeding. *Strutz,* at ¶ 20; *Olan-*

**3.** The defendants were represented by differ- ent counsel at trial than on appeal.

*der*, 1998 ND 50, ¶ 15, 575 N.W.2d 658. The burden is upon the defendant to show the alleged error was prejudicial. *State v. Jensen*, 2000 ND 28, ¶ 18, 606 N.W.2d 507; *Burger*, at ¶ 13. An alleged error does not constitute obvious error "unless there is a clear deviation from an applicable legal rule under current law ." *Olander*, at ¶ 14. Even if the defendant meets his burden of establishing obvious error affecting substantial rights, the determination whether to correct the error lies within the discretion of the appellate court, and the court should exercise that discretion only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at ¶ 16; *Jones*, 527 U.S. at 389, 119 S.Ct. 2090; *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

 [¶ 23] We address the defendants' arguments within the context of these standards guiding obvious error analysis. The defendants first assert N.D.J.I.— Criminal 2043, as given by the trial court, misstates the law because it states that intoxication does not relieve a defendant of "criminal responsibility,"rather than stating intoxication is "not a defense." *See* N.D.C.C. § 12.1–04–02(1). We do not believe this instruction constitutes "a clear deviation from an applicable legal rule under current law." *See Olander*, 1998 ND 50, ¶ 14, 575 N.W.2d 658. The pattern instruction merely expresses, in layman's terms, the gist of the statute: A defendant who is intoxicated is not entitled to acquittal, but may be held responsible for his crime. We conclude it was not obvious error to give the instruction based upon N.D.J.I.—Criminal 2043.

[¶ 24] The defendants also assert the two instructions given by the trial court may have misled or confused the jury, because one instruction directed that intoxication does not relieve the defendant of criminal responsibility, while the other directed that intoxication could be considered when determining whether the defendant acted with the required culpability.

To place the defendants' argument into context, we must review the offenses with which they were charged. Section 12.1–16–01(1), N.D.C.C., provides in pertinent part:

> A person is guilty of murder, a class AA felony, if the person:
>
> a. Intentionally or knowingly causes the death of another human being; [or]
>
> b. Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life;....

The defendants were charged alternatively with murder under both subsections (a) and (b).

 [¶ 25] The jury was instructed, and the defendants do not dispute on appeal, that the required culpability for murder under subsection (b) is "willfully." Section 12.1–02–02(2), N.D.C.C., provides:

> If a statute or regulation thereunder defining a crime does not specify any culpability and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is willfully.

As a result, murder under subsection (b) is a crime of general intent, *see State v. Cummins*, 347 N.W.2d 571, 572 (N.D. 1984), whereas murder under subsection (a), requiring proof the defendant intentionally or knowingly caused the death of another person, may require specific intent.

 Section 12.1–04–02(1), N.D.C.C., provides:

> Intoxication is not a defense to a criminal charge. Intoxication does not, in itself, constitute mental disease or defect within the meaning of section 12.1–04–04. Evidence of intoxication is admissible whenever it is relevant to negate or to establish an element of the offense charged.

This Court has held the law of intoxication applies differently to specific intent crimes than to general intent crimes. Although

voluntary intoxication is not exculpatory in itself, where an offense requires proof of a specific intent, intoxication may be considered in determining whether such intent existed. *Barnes,* 551 N.W.2d at 281; *State v. Tipler,* 316 N.W.2d 97, 101 (N.D.1982). Voluntary intoxication is irrelevant to a crime of general intent, and does not relieve the defendant of criminal responsibility. *See Barnes,* 551 N.W.2d at 281; *Cummins,* 347 N.W.2d at 572. Thus, in this case, which alleged both specific intent and general intent crimes, it was not error to charge generally that intoxication does not relieve a defendant of criminal responsibility, and to also separately charge that intoxication may be relevant in determining whether the defendants formed the requisite specific intent for "intentional or knowing" murder under N.D.C.C. § 12.1–16–01(1)(a).

[¶ 26] The defendants argue that the instructions as given may have confused the jury. Specifically, they allege that, because the jury was instructed intoxication does not relieve a defendant of criminal responsibility, the jury may have mistakenly believed that evidence of intoxication was irrelevant to the determination whether the defendants had formed the specific intent of "intentionally or knowingly" causing the deaths of Gordon and Barbara Erickstad.

[¶ 27] Arguably the trial court could have and should have more fully and carefully instructed the jury on the relevance of intoxication to the alternate forms of murder charged. However, even if we assume, without deciding, that the instructions were potentially confusing, the defendants have failed to demonstrate prejudice affecting their substantial rights. The defendants argue only that the jury may have been confused and erroneously applied the law in finding them guilty of "intentional or knowing" murder under N.D.C.C. § 12.1–06–01(1)(a). In this case, however, the defendants were alternatively charged with the general intent crime of "extreme indifference to the value of hu-

man life" murder under N.D.C.C. § 12.1–16–01(1)(b). The jury was given a verdict form in which it was required to find guilt or innocence on each count for subsection (a) and (b) murder separately. Thus, for each murder victim, the jury found separately that each defendant had intentionally or knowingly caused the death, *and* that each had willfully caused the death under circumstances manifesting extreme indifference to the value of human life. Therefore, even if we were to find error affecting the guilty verdicts on the "intentional or knowing" murder charges under subsection (a), those errors could not have affected the separate verdicts finding the defendants guilty of "extreme indifference" murder under subsection (b). These counts were pleaded alternatively, and the defendants could only be convicted of and punished for one count of murder for each victim. Murder under either subsection is a class AA felony, and carries the same range of penalties. Under these circumstances, any possible confusion in the jury instructions could not affect the ultimate result in the case. *See State v. Tjaden,* 69 N.W.2d 272, 281 (N.D.1955).

[¶ 28] When asked at oral argument how the defendants had been prejudiced by the alleged error in the jury instructions, the defendants' counsel suggested the verdicts of guilty on "intentional or knowing" murder may have influenced the trial court during sentencing. Counsel did not direct our attention to anything in the record to support this assertion, and our review of the transcripts of the sentencing hearings does not reveal that the trial court considered the different forms of murder under N.D.C.C. § 12.1–16–01(1) in determining the defendants' sentences.

[¶ 29] We have examined the entire record and considered the probable effect of the alleged errors in light of all the evidence. Under the circumstances presented, the defendants have failed to show that the alleged errors were prejudicial and accordingly there is no obvious error under N.D.R.Crim.P. 52(b).

IV

[¶ 30] Erickstad and Lawrence allege the trial court erred in allowing evidence of the value of the 1998 Chevrolet pickup. They were charged with class B felony theft of property for their theft of the pickup. Section 12.1–23–05(1), N.D.C.C., provides that theft is a class B felony if the value of the property stolen exceeds $10,000. The statute further provides:

> For purposes of grading, the amount involved in a theft under this chapter shall be the highest value by any reasonable standard, regardless of the actor's knowledge of such value, of the property or services which were stolen by the actor, or which the actor believed that the actor was stealing, or which the actor could reasonably have anticipated to have been the property or services involved.

N.D.C.C. § 12.1–23–05(6); *see also State v. Ebach*, 1999 ND 5, ¶ 13, 589 N.W.2d 566.

[¶ 31] A police officer testified, over the defendants' objection, that he checked the value of the 1998 Chevrolet pickup on the Kelley Blue Book internet website, which showed an estimated value of $26,995. The defendants argue on appeal that evidence from the Blue Book is inadmissible hearsay. The State contends the evidence is admissible under N.D.R.Ev. 803(17), which states the following are not excluded by the hearsay rule:

> Market Reports, Commercial Publications. Market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations.

[¶ 32] Numerous cases from other jurisdictions, interpreting rules identical or similar to N.D.R.Ev. 803(17), have held that recognized used car price guides fit within this exception to the hearsay rule. *See, e.g., United States v. Johnson*, 515 F.2d 730, 732 n. 4 (7th Cir.1975); *In re Roberts*, 210 B.R. 325, 330 (Bankr. N.D.Iowa 1997); *In re Byington*, 197 B.R. 130, 138 (Bankr.D.Kan.1996); *O'Brien v. Rush*, 744 P.2d 306, 309 (Utah Ct.App. 1987). The Kelley Blue Book has been specifically recognized as a reliable reference for valuation of vehicles. *See, e.g., Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 n. 5 (9th Cir.1986) (recognizing the Kelley Blue Book as "the standard reference for prices" of vehicles and mobile homes); *In re Mama's Original Foods, Inc.*, 234 B.R. 500, 504 (Bankr. C.D.Cal.1999) (Kelley Blue Book "establishes the market value for automobiles" and a sale at the Kelley Blue Book price "is presumptively at the market price"); *In re Gates*, 214 B.R. 467, 471 n. 6 (Bankr. D.Md.1997) (Kelley Blue Book is recognized "as credible evidence of valuation"); *Burk v. Sunn*, 68 Haw. 80, 705 P.2d 17, 25–26 (1985) (recognizing Hawaii Department of Social Services and Housing administrative rule providing that, for purposes of AFDC eligibility, the fair market value of an automobile may be determined by considering the Kelley Blue Book retail value).

[¶ 33] We recognize that, in this case, the police officer checked the value of the pickup on the Kelley Blue Book internet website, not in the print edition. The defendants have offered no cogent reason why evidence derived from the website, rather than the print edition, should be excluded under N.D.R.Ev. 803(17). Information obtained from internet websites may be admissible under N.D.R.Ev. 803(17). *See Elliott Associates, L.P. v. Banco de la Nacion*, 194 F.R.D. 116, 121 (S.D.N.Y.2000) (construing Fed. R.Evid. 803(17)). The Kelley Blue Book internet website has been specifically relied upon in at least one federal court decision. *See Irby–Greene v. M.O.R., Inc.*, 79 F.Supp.2d 630, 636 n. 22 (E.D.Va.2000).

[¶ 34] The trial court has broad discretion over evidentiary matters, and we will not overturn a trial court's decision to admit or exclude evidence unless the court abuses that discretion. *State v. Jensen*, 2000 ND 28, ¶ 10, 606 N.W.2d 507;

**146**

*State v. Gagnon,* 1999 ND 13, ¶ 9, 589 N.W.2d 560. A trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law. *State v. Farrell,* 2000 ND 26, ¶ 8, 606 N.W.2d 524. We conclude the trial court did not abuse its discretion in allowing evidence of the value of the stolen pickup based upon the Kelley Blue Book value.

### V

[¶ 35] We have considered the remaining issues raised by the defendants and find them to be without merit. The judgments of conviction are affirmed.

[¶ 36] VANDE WALLE, C.J., and SANDSTROM, NEUMANN, and MARING, JJ., concur.