2000 ND 53

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Matthew Charles FRASER, Defendant and Appellant.**

**State of North Dakota, Plaintiff and Appellee,**

v.

**Christopher Scott Fraser, Defendant and Appellant.**

**State of North Dakota, Plaintiff and Appellee,**

v.

**Christopher Fraser, Defendant and Appellant.**

**Nos. 990179–990181.**

Supreme Court of North Dakota.

March 21, 2000.

Mark A. Flagstad, Assistant State's Attorney, Minot, for plaintiff and appellee.

Debra K. Edwardson, Edwardson Law Office, Minot, for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] In these consolidated appeals, Christopher Fraser appealed from a judgment of conviction of forgery, and Christopher and Matthew Fraser appealed from judgments of conviction of burglary. We affirm.

## I. THE FORGERY CASE

[¶ 2] Mandy Taniguchi was an acquaintance of Christopher Fraser, and he sometimes babysat for her. In November 1997, two checks written on Taniguchi's closed checking account were passed at a Mini-Mart in Minot. When Mini-Mart contacted her about the returned checks, Taniguchi explained they had been forged and she contacted the police. A Mini-Mart store clerk later identified Christopher Fraser as the person who had passed the second check. Fraser was charged with forgery, and a jury found him guilty. Fraser appealed, asserting there was insufficient evidence for the jury to convict him of forgery.

[¶ 3] Appellate review of the sufficiency of the evidence for a jury verdict is very limited. *State v. Freed*, 1999 ND 185, ¶ 4, 599 N.W.2d 858. A criminal conviction will be reversed only if, after viewing the evidence and all reasonable evidentiary inferences in the light most favorable to the verdict, no rational fact finder could have found the defendant guilty beyond a reasonable doubt. *City of Jamestown v. Neumiller*, 2000 ND 11, ¶ 5, 604 N.W.2d 441; *State v. Ebach*, 1999 ND 5, ¶ 24, 589 N.W.2d 566. As a reviewing court, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to support the verdict. *Freed*, at ¶ 4. The task of weighing the evidence and judging the credibility of witnesses belongs exclusively to the jury, and we do not resolve conflicts in the evidence or reweigh

credibility. *Ebach*, at ¶ 24; *State v. Gagnon*, 1999 ND 13, ¶ 23, 589 N.W.2d 560. A verdict based upon circumstantial evidence carries the same presumption of correctness as other verdicts. *State v. Steinbach*, 1998 ND 18, ¶ 16, 575 N.W.2d 193.

[¶ 4] The jury was instructed the State was required to prove Fraser "knowingly forged or uttered a check on an account in the name of Mandy Taniguchi." *See* N.D.C.C. § 12.1–24–01(1). For purposes of our criminal code, a person engages in conduct " '[k]nowingly' if, when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so." N.D.C.C. § 12.1–02–02(1)(b).

[¶ 5] Fraser argues there is no direct evidence he knew the check was forged, and therefore the State failed to prove an essential element of the offense. We have recognized, however, the difficulty of proving through direct evidence a defendant's actual state of mind, and have allowed the jury to infer what the defendant "knew" from the surroundings facts and circumstances:

> [P]roof of what a particular person in fact subjectively believes will of necessity *always* be by circumstantial evidence. It is impossible for the factfinder to step into the shoes of the defendant to see what was actually in his mind at the time the wrongful conduct was engaged in. The factfinder must make its determination based upon whether the facts and circumstances would have caused this particular defendant to "know" the requisite facts. Thus, the court, as factfinder in the instant case, was allowed to consider all of the surrounding facts and circumstances in determining whether Kaufman knew that the copper wire was lost or mislaid.

*State v. Kaufman*, 310 N.W.2d 709, 714 (N.D.1981).

[¶ 6] In this case, there was evidence from which the jury could infer Fraser

either forged Taniguchi's check or knowingly presented a forged check. Fraser babysat in Taniguchi's home, and would have had access to her check blanks. Taniguchi testified the signature on the check was not hers and she had not authorized anyone to use the checks. The store clerk identified Fraser as the person who presented the check, and testified he saw Fraser write in the name of the store and amount on the check. He did not, however, see if Fraser signed the check.

[¶ 7] Fraser testified he received the check from Patrick Nadon, another friend of Taniguchi, and believed Nadon had received it as payment for babysitting. He further testified the check was completely filled out when he received it from Nadon. Fraser's testimony conflicts with the store clerk's testimony that he saw Fraser fill out a portion of the check in the store. The jury may have also believed it unlikely Taniguchi would have paid Nadon with a check made out to Mini–Mart, rather than directly to Nadon, and that the amount of the check, $10.27, was an unlikely amount to pay a babysitter.

[¶ 8] The evidence of the surrounding facts and circumstances was sufficient for the jury to draw an inference Fraser knowingly forged the check or presented the forged check. We will not reweigh the conflicting evidence or reassess the credibility of the witnesses. Viewing the evidence and inferences therefrom in the light most favorable to the verdict, we conclude there is sufficient evidence to support the verdict.

## II. THE BURGLARY CASES

### A. *Corroboration of Accomplice Testimony*

[¶ 9] In the early morning hours of August 24, 1998, the home of Jerome and Janice Lundeen in Minot was burglarized. Nicholas Lee, Ron Skarhus, Shane Mortenson, Christopher Fraser, and Matthew Fraser were implicated and charged with the burglary.

[¶ 10] At the trial of Christopher and Matthew Fraser, the State relied primarily upon the testimony of Lee and Skarhus. According to their testimony, they attended a party at the apartment of Christopher and Matthew Fraser beginning the evening of August 23. After drinking into the early morning hours of August 24, Lee, Skarhus, Mortenson, and the Frasers traveled to the Lundeen home in Matthew Fraser's car, an Oldsmobile Cutlass. They broke into the Lundeen home and took various items, placing them into the trunk of Matthew Fraser's car. They then returned to the Frasers' apartment.

[¶ 11] According to Lee and Skarhus, the five returned to the Lundeen home in Lee's car, a Plymouth Horizon, at approximately 6:00 a.m. They again entered the Lundeen home and stole additional items. As two of the five returned to the car they dropped a liquor bottle on the street; as it broke, they noticed someone jogging in the area. They quickly drove the vehicle around the corner to the front of the Lundeen house, where they picked up the other three and drove away.

[¶ 12] An off-duty policeman testified he was out jogging in his neighborhood when he heard glass breaking. He saw two individuals get into a Plymouth Horizon and drive away. He also found a broken liquor bottle in the street where the Horizon had been parked. He returned home and called police to report the incident.

[¶ 13] Officer Dunn testified he received a report at 6:20 a.m. of disorderly suspects in a brown Horizon. When he saw the vehicle drive past him in the opposite direction, he turned his patrol car around and activated his overhead lights. As Dunn turned around, the Horizon sped around a corner. When Dunn got to the corner, the Horizon was stopped in the middle of the street with the doors open. Dunn saw at least four white males running from the car over a railroad embankment. Matthew Fraser and Lee were caught fleeing from the vehicle. The Horizon contained numerous items which were

later identified as stolen from the Lundeen home.

[¶ 14] Matthew Fraser was arrested for consumption of alcohol by a minor, appeared in municipal court, and was released early that same morning. In the meantime, Janice Lundeen had discovered the burglary and reported it to the police. Lee, who was still in custody, was questioned about the burglary and admitted his involvement. He told police some of the stolen items may have been hidden near the Lundeen house, and agreed to return to the scene to help officers locate the items. As they approached the Lundeen house at approximately 10:30 a.m., Lee identified Matthew Fraser's Oldsmobile Cutlass, with the other accomplices in it, heading in the opposite direction. Police turned and gave chase, and again the suspects sped around a corner and abandoned the car in the street. Skarhus, Mortenson, and both Frasers were apprehended fleeing from the vehicle. The trunk of the Oldsmobile Cutlass contained numerous items stolen from the Lundeen home.

[¶ 15] A jury found Christopher and Matthew Fraser guilty of burglary, and judgments of conviction were entered. On appeal, the Frasers assert the testimony of the two accomplices was not sufficiently corroborated under N.D.C.C. § 29–21–14, and that without the accomplices' testimony the evidence was insufficient to support the jury verdicts.

[¶ 16] Under N.D.C.C. § 29–21–14, corroboration of an accomplice's testimony is required:

> *Testimony of accomplice—Corroboration required.* A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

The purpose of the corroboration requirement is to show that a testifying accomplice is a reliable witness and worthy of credit. *State v. Esparza*, 1998 ND 13, ¶ 6, 575 N.W.2d 203; *State v. Zimmerman*, 524 N.W.2d 111, 114 (N.D.1994).

[¶ 17] We have set forth standards for applying the requirement:

> It is the trial court's duty to first determine, as a matter of law, whether there is any evidence corroborating the testimony of the accomplice. Any amount of corroboration is sufficient to give the case to the jury to determine the sufficiency of the corroboration. It is only when there is no corroborating evidence that this Court may reverse a judgment based upon the verdict of guilty.
>
> All that is required is that the evidence, circumstantial or otherwise, corroborates the testimony of the accomplice as to some material fact or facts, and tends to connect the defendant with the commission of the crime. It is not necessary that the corroborating evidence be sufficient, in itself, to warrant a conviction or establish a prima facie case. It is the combined and cumulative weight of the evidence, other than the testimony of the accomplice witness, which satisfies the statute. The State need not point to a single, isolated fact which is sufficient corroboration.

*State v. Haugen*, 449 N.W.2d 784, 785–86 (N.D.1989) (citations omitted); *see also Esparza*, at ¶ 7; *Zimmerman*, 524 N.W.2d at 114.

[¶ 18] The corroborating evidence need not be incriminating in itself. *State v. Garcia*, 1997 ND 60, ¶ 38, 561 N.W.2d 599; *State v. Torres*, 529 N.W.2d 853, 855 (N.D.1995). Nor must the corroborating evidence directly link the accused to the crime. *State v. Burgard*, 458 N.W.2d 274, 277 (N.D.1990); *State v. Haugen*, 448 N.W.2d 191, 195 (N.D.1989). As we explained in *Torres*, 529 N.W.2d at 855 (quoting *Burgard*, 458 N.W.2d at 277):

> "The corroborating evidence need not 'establish criminal conduct,' but need

only corroborate the accomplice as to some material fact and *tend to connect* the defendant with the crime. Furthermore, the corroborating evidence need not, in isolation, be incriminating, if the combined and cumulative evidence other than the accomplice's testimony tends to connect the defendant with the commission of the offense."

[¶ 19] Applying these standards, there is sufficient corroborating evidence which tends to connect Matthew Fraser to the burglary. Matthew Fraser and one of the testifying accomplices were caught after fleeing a vehicle which was stopped within blocks of the crime scene immediately after the burglary occurred. In addition, the vehicle contained items stolen from the Lundeen house. There was clearly sufficient corroboration of the accomplice testimony as to Matthew Fraser. *See Esparza,* 1998 ND 13, ¶ 14, 575 N.W.2d 203 (evidence of an accused's presence near the scene of a crime, immediately before and soon after the crime, corroborated the accomplice's testimony); *State v. Garcia,* 425 N.W.2d 918, 920 (N.D.1988) (evidence that the defendant was in the company of accomplices at or near the place of the crime shortly before or after the crime is committed may be sufficient corroboration).

[¶ 20] The evidence of corroboration as to Christopher Fraser is not as strong, but, viewed in totality, was sufficient to allow the accomplice testimony to go to the jury. There was testimony placing Christopher with the accomplices until shortly before the burglary occurred. There was also testimony that, while police were transporting Lee back to the crime scene to attempt to locate stolen items "stashed" nearby, Lee identified the occupants of a passing vehicle as the other participants in the burglary. At the time, they were within a block of the Lundeen house. When police stopped the vehicle all of the occupants, including Christopher Fraser, jumped out of the car and ran.

The car contained items stolen from the Lundeen house.

[¶ 21] Relying upon *State v. Hogie,* 454 N.W.2d 501 (N.D.1990), Christopher Fraser argues the evidence of corroboration was insufficient because there was no showing he exercised dominion and control over the stolen property found in Matthew's car when it was stopped by police. Christopher has misinterpreted *Hogie* and our standard for applying the corroboration requirement. We do not look to a single factor, but examine the combined and cumulative weight of the corroborating evidence. Nor must the corroborating evidence be direct evidence of the defendant's participation in the crime.

[¶ 22] In this case there are several pieces of evidence which, when viewed together, sufficiently corroborate the testimony of Lee and Skarhus. The evidence shows Christopher was with Lee and Skarhus in the early morning hours shortly before the burglary, and with Skarhus a few hours after the crime. *See Zimmerman,* 524 N.W.2d at 114 (the fact the defendant and accomplice were together late at night before an early-morning burglary and a few hours after the burglary creates an inference they were together during the intervening hours). Christopher was near the Lundeen home with the other perpetrators of the crime a few hours after the burglary, and fled when police stopped the car. *See Garcia,* 1997 ND 60, ¶ 39, 561 N.W.2d 599 (flight from police may be a corroborating factor). Finally, when Matthew Fraser's vehicle was stopped near the crime scene within a few hours of the burglary, with Christopher as a passenger, the trunk of the car was full of items stolen from the Lundeen house. The cumulative and combined weight of this evidence is sufficient to corroborate the accomplices' testimony under N.D.C.C. § 29–21–14.

### B. *Ineffective Assistance Of Counsel*

[¶ 23] Christopher and Matthew Fraser assert they received ineffective assistance of counsel on the burglary

charges. We have often stated claims of ineffective assistance of counsel should be raised through a petition for post-conviction relief, rather than upon direct appeal:

A claim of ineffective assistance of counsel at trial should not be brought on direct appeal, but rather through a petition for post-conviction relief. A post-conviction relief proceeding enables the parties to fully develop a record on the issue of counsel's performance and its impact on the defendant's case. Claims of ineffective assistance of counsel are ordinarily unsuited to summary disposition without an evidentiary hearing. However, when an ineffective assistance of counsel claim is asserted on direct appeal, we will examine the record to determine if the assistance of counsel was plainly defective. If we cannot readily determine assistance of counsel was plainly defective and there are no other grounds for reversal, then the defendant can later pursue the claim at a post-conviction proceeding where an adequate record can be developed.

*State v. Burke,* 606 N.W.2d 108, 2000 ND 25, ¶ 35 (citations omitted); *see also State v. Strutz,* 2000 ND 22, ¶ 26.

[¶ 24] After reviewing the record on appeal, we cannot readily determine counsel's assistance was plainly defective. The Frasers may pursue these claims in post-conviction proceedings, wherein an adequate record can be developed.

## III. CONCLUSION

[¶ 25] The convictions in these cases are supported by sufficient evidence. We have considered other issues raised by the parties and find them to be without merit. The judgments of conviction are affirmed.

[¶ 26] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.