2001 ND 132

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Daniel Linton MILLER, Defendant and Appellant.**

**No. 20000337.**

Supreme Court of North Dakota.

July 20, 2001.

Tory J. Langemo (argued), Senior Legal Intern, Sonja Clapp (appeared), Assistant State's Attorney, Grand Forks, ND, for plaintiff and appellee.

Loretta J. Walberg (argued), Grand Forks, MN, for defendant and appellant.

Thomas J. Kuchera (on brief), Grand Forks, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Daniel Miller appealed from a criminal judgment entered upon a jury verdict finding him guilty of gross sexual imposition. We affirm, concluding (1) the trial court did not abuse its discretion or violate Miller's right to present a defense when it excluded evidence and (2) a minor reconfiguration of the courtroom to accommodate the child victim's testimony was not obvious error.

I

[¶ 2] Between December 1998 and March 1999, Miller lived with his sister R.A. ("Rhonda," a pseudonym) and her family in their home on the Grand Forks Air Force Base. Miller then moved out of their home and eventually returned to his home state of Washington.

[¶ 3] In April 2000, Rhonda was contacted by school authorities regarding sex-

ually inappropriate conduct at school by her first-grade daughter, A.R. ("Ann"). When Ann returned home from school, Rhonda and M.A. ("Mike"), Ann's stepfather, questioned her about the incident and asked if anyone had ever been inappropriate with her. Ann eventually revealed that Miller had "peed" on her on several occasions in the bathroom and basement of the family's home while he was living there. Rhonda contacted a child psychologist, and the matter was investigated by military officials, the county sheriff's department, and a social worker. In interviews, Ann related that Miller had on several occasions masturbated on her at the family's home on the base.

[¶ 4] Miller was charged with gross sexual imposition. The jury found him guilty, and Miller appealed from the criminal judgment.

## II

[¶ 5] Miller asserts the trial court erred in excluding evidence of a dream Ann had about another male relative, and in excluding evidence of an abuse and neglect report filed against Rhonda and Mike.

[¶ 6] The trial court has broad discretion over evidentiary matters, and we will not overturn a trial court's decision to admit or exclude evidence unless the court abuses that discretion. *State v. Erickstad*, 2000 ND 202, ¶ 34, 620 N.W.2d 136; *State v. Jensen*, 2000 ND 28, ¶ 10, 606 N.W.2d 507. A trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law. *Erickstad*, at ¶ 34; *State v. Farrell*, 2000 ND 26, ¶ 8, 606 N.W.2d 524.

## A

[¶ 7] Miller argues the trial court erred in excluding evidence of a dream Ann had about another male relative, Jamie. The dream came to light through a note in Ann's school file written by her first grade teacher, Kristin Spradlin. The note, dated April 17, 2000, says, in pertinent part:

Pam Beck [another teacher] shared a conversation she overheard between [Ann] and [another student] on 4–14–00. Also stated [Ann] came in crying and just wanted to leave to be with Mom.

[Ann] was sharing that she had a bad dream about Jamie (Mom's old boyfriend) and that he would make her go downstairs and wear this necklace. She stated she was very scared because he said the wolves would come get her.[1]

[¶ 8] The State filed a motion in limine to exclude this evidence because it was hearsay. At the beginning of the trial, the court ruled the April 17, 2000 note was hearsay and would be excluded.

[¶ 9] The note presents multiple levels of hearsay. There is Ann's out-of-court statement overheard by Beck, Beck's statement to Spradlin, and Spradlin's written note. Each of these constitutes a separate level of hearsay, and Miller would have to establish an exception for each level of hearsay for it to be admissible under the rules of evidence. *See* N.D.R.Ev. 805; *State v. Lefthand*, 523 N.W.2d 63, 68 (N.D.1994).

[¶ 10] On appeal, Miller concedes this evidence is hearsay but argues that, under *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), exclusion of the evidence violates his constitutional right to present a defense.[2] Miller

---

1. The note erroneously refers to Jamie as Rhonda's old boyfriend. The record indicates Jamie is actually the husband of Rhonda's niece.

2. The record does not reveal that Miller

argues that, under *Chambers,* a defendant's due process right to present evidence in his behalf may "trump" state evidentiary rules, including the hearsay rule.

[¶ 11] *Chambers* presented a clearly distinguishable factual scenario. Chambers had been charged with killing a police officer. Another man, McDonald, shortly after the shooting told several people that he had killed the officer, and he eventually gave a signed, sworn confession to the murder to Chambers's attorneys. However, McDonald subsequently recanted his confession. Because Mississippi still adhered to the "voucher rule," whereby a party could not repudiate his own witness, Chambers was not allowed to call McDonald to the stand and cross-examine him about his prior confessions. Furthermore, because Mississippi's version of the hearsay rule did not provide an exception for statements against penal interest, Chambers was also prevented from calling third parties to testify they had heard McDonald admit he had killed the officer. Chambers was allowed to introduce McDonald's written confession but, when McDonald testified he had not killed the officer and had confessed in an attempt to share in a civil lawsuit against the city, Chambers was not allowed to question him about his confessions to other persons.

[¶ 12] On these facts, the United States Supreme Court held that, where the "testimony ... was critical to Chambers' defense" and "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers,* 410 U.S. at 302, 93 S.Ct. 1038. The Court pointed out, however, that it was not establishing any new rule of law, and indicated that its holding was limited to the facts of that

raised this argument to the trial court.

case. *Id.* at 302–03, 93 S.Ct. 1038. In *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), under similar circumstances, the Court in a per curiam opinion followed *Chambers* and again held evidence of another person's confession which would have exonerated the defendant should have been admitted.

■ [¶ 13] *Chambers* does not create a broad rule that the right to present a defense "trumps" well-developed, long-standing rules of evidence which are designed to insure that only reliable, trustworthy evidence is presented to the finder of fact. The Court in *Chambers* cautioned that its holding was based upon the unique facts and circumstances presented in that case. More significantly, the United States Supreme Court in subsequent decisions has strictly limited *Chambers* to its unique facts. *See United States v. Scheffer,* 523 U.S. 303, 316, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998); *Montana v. Egelhoff,* 518 U.S. 37, 52–53, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality opinion). The *Egelhoff* Court labeled *Chambers* "an exercise in highly case-specific error correction." *Egelhoff,* at 52, 116 S.Ct 2013. The Court in *Scheffer* concluded that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," and "[s]uch rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer,* at 308, 118 S.Ct. 1261 (quoting *Rock v. Arkansas,* 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)); *see also State v. Flohr,* 301 N.W.2d 367, 371 (N.D.1980) ("A defendant's right to present evidence on his own behalf ... is not a right to confound otherwise reasonable rules of procedure aimed

at ascertaining the truth and accomplishing justice."). The United States Supreme Court has recognized that *"Chambers* therefore does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence." *Scheffer,* at 316, 118 S.Ct. 1261.

[¶ 14] The evidence sought to be admitted in this case does not fall into the same category as that excluded in *Chambers* and *Green.* In each of those cases, the excluded evidence was a confession to the crime by someone else. In this case, the evidence is a child's recollection of a dream. Even if accepted as true, the evidence about Ann's dream contains no specific sexual content, does not directly refute any of the State's evidence against Miller, and is, at best, marginally relevant. Miller's assertion that this evidence was highly reliable and critical to his defense is unsupportable.

[¶ 15] Furthermore, Miller has mischaracterized the extent of the trial court's ruling in this case. Miller argues the trial court excluded all evidence about the dream. The record, however, clearly shows the trial court specifically excluded only the school note, and expressly left open the possibility of admission of evidence about the dream in another manner:

> With regard to testimony about dreams the minor may have had after the alleged incident, if this is being offered through someone other than the minor child, it is certainly hearsay. If and when counsel intend to offer testimony through the minor child as to what dreams she might have had which they feel may be relevant, I intend to afford counsel the opportunity at that time to make an offer of proof outside the hearing of the jury at that juncture in trial. Therefore, further determination on the dream issue will be deferred until then.

> The April 17, 2000, note is excluded as hearsay.

Thus, the trial court did not exclude all evidence regarding the dream Ann had about Jamie. Miller did not attempt to elicit testimony about the dream through any witness or make an offer of proof.

[¶ 16] Under the circumstances of this case, we conclude the trial court's exclusion of the evidence was not an abuse of discretion and did not violate the defendant's constitutional right to present a defense.

### B

[¶ 17] Miller contends the trial court erred in excluding a report of suspected child abuse and neglect which had been filed by a neighbor against Rhonda and Mike in September, 2000. The report alleged the home and the children were dirty, the parents drank and smoked "a lot," the children were sometimes locked in their rooms when they got into trouble, and Ann on one occasion unexpectedly walked into the parents' bedroom and saw Mike masturbating. After an investigation by authorities, the allegations in the report were found to be baseless.

[¶ 18] The only allegation in the report which has any relevance whatsoever to the present case is the masturbation incident involving Ann's stepfather, Mike. However, other evidence was admitted establishing this incident. In his testimony, Mike explained the incident and admitted it had occurred. Thus, any probative value of the evidence of this incident in the abuse and neglect report would have been purely cumulative.

[¶ 19] Under N.D.R.Ev. 103, error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected. *State v. Osier,* 1999 ND 28, ¶ 14, 590

N.W.2d 205; *State v. Trotter*, 524 N.W.2d 601, 602 (N.D.1994). A trial court does not abuse its discretion when it excludes evidence which would have been merely cumulative of abundant other evidence establishing a fact. *See Osier*, at ¶¶ 14–16. In this case, the report was merely cumulative of other evidence in the record and the trial court did not abuse its discretion in excluding it.

### III

[¶ 20] Miller contends the trial court committed obvious error when it allowed Ann to testify without directly facing Miller. Miller argues his constitutional right to confrontation was violated by this procedure.

[¶ 21] Ann was the first witness to testify on the second day of trial. Miller's attorney asserts on appeal that, when she entered the courtroom after the overnight break, the courtroom had been reconfigured with two small chairs placed near the jury. Before Ann testified, the court twice asked counsel if there was anything they wanted to put on the record before the jury was brought in. Miller did not object to the reconfiguration of the courtroom. Ann testified while seated in one of the chairs, and the prosecutor sat in the other chair. When Miller's attorney cross-examined Ann, she also sat in the other chair.

[¶ 22] Miller never objected to this procedure. At the end of Ann's testimony, Miller's attorney asked the court to note for the record the procedure which had been employed:

MS. WALBERG: Your Honor, could we have the record reflect the procedures that were used for this witness to testify.

THE COURT: Why don't you articulate what you would like to be reflected.

MS. WALBERG: I would like the record to reflect the child did not face the Defendant. That the child was facing the jury seated on a chair facing Miss Clapp [the prosecutor] during the testimony. That the child did not testify with the microphone so some of the testimony was difficult to hear. Even I had trouble hearing it. And that we were not advised of these procedures prior to her testimony. Thank you.

[¶ 23] On appeal, Miller argues this procedure violated his rights under the confrontation clause; the trial court should have held a hearing in accordance with *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), before adopting special procedures for the child's testimony; and the trial court should have given an instruction cautioning the jury not to infer guilt from use of these procedures.

[¶ 24] When a problem arises during a trial, the party affected must bring the irregularity to the trial court's attention and seek appropriate remedial action. *State v. Wilson*, 1999 ND 34, ¶ 14, 590 N.W.2d 202. Generally, issues not raised below, even constitutional issues, will not be addressed on appeal unless the alleged error rises to the level of obvious error under N.D.R.Crim.P. 52(b). *Berlin v. State*, 2000 ND 13, ¶ 20, 604 N.W.2d 437; *State v. Mertz*, 514 N.W.2d 662, 670 (N.D. 1994). Similarly, when a defendant fails to specifically request an instruction or object to omission of an instruction, the issue is not adequately preserved for appellate review and our inquiry is limited under N.D.R.Crim.P. 52(b) to whether the court's failure to instruct the jury on the issue was obvious error affecting substantial rights. *State v. Glass*, 2000 ND 212, ¶ 19, 620 N.W.2d 146; *State v. Erickstad*, 2000 ND 202, ¶ 18, 620 N.W.2d 136.

[¶ 25] We exercise our power to consider obvious error cautiously and

only in exceptional circumstances where the defendant has suffered serious injustice. *Glass,* 2000 ND 212, ¶ 11, 620 N.W.2d 146; *Erickstad,* 2000 ND 202, ¶ 21, 620 N.W.2d 136. We have very rarely found obvious error under N.D.R.App.P. 52(b). *Erickstad,* at ¶ 21; *State v. Mathre,* 1999 ND 224, ¶ 5, 603 N.W.2d 173. In order to establish obvious error, the defendant has the burden to show (1) error, (2) that is plain, and (3) that affects substantial rights. *Glass,* at ¶ 11; *State v. Burke,* 2000 ND 25, ¶ 16, 606 N.W.2d 108. An alleged error does not constitute obvious error unless there is a clear deviation from an applicable legal rule under current law. *Erickstad,* at ¶ 22; *State v. Olander,* 1998 ND 50, ¶ 14, 575 N.W.2d 658. Even if the defendant meets the burden of establishing obvious error affecting substantial rights, the determination whether to correct the error lies within the discretion of the appellate court, and the court should exercise that discretion only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Erickstad,* at ¶ 22; *Olander,* at ¶ 16.

[¶ 26] In reviewing for obvious error in this case, we initially note the record does not provide a precise description of how the courtroom was configured for Ann's testimony. The record reflects only that "the child did not face the Defendant" and "was facing the jury seated on a chair facing Miss Clapp during the testimony." From this record, we do not know whether Ann had her back to Miller, was perpendicular to him, or was seated at some other angle. When raising a Confrontation Clause challenge, the defendant bears the burden of creating a clear record of the configuration of the courtroom. *See Smith v. State,* 340 Ark. 116, 8 S.W.3d 534, 538 (2000) (Brown, J., concurring); *State v. Hoyt,* 806 P.2d 204, 209 (Utah Ct.App. 1991). As this Court noted in *Zarak v. Hjelle,* 156 N.W.2d 815, 816 (N.D.1968),

error is never presumed on appeal but must be affirmatively shown by the record, and the burden of so showing is on the party alleging error.

[¶ 27] Miller alleges obvious error in this case because he was not allowed to confront Ann "face-to-face" when she testified. The United States Supreme Court has concluded that the Confrontation Clause does not compel a witness "to fix his eyes upon the defendant." *Coy v. Iowa,* 487 U.S. 1012, 1019, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). Numerous courts have held that, as long as the defendant and witness are present in the courtroom and their view of each other is not physically obstructed, as by a screen or two-way mirror, the Confrontation Clause is not violated by allowing the witness to testify while facing away from the defendant. *See, e.g., Brandon v. State,* 839 P.2d 400, 409–10 (Alaska Ct.App.1992); *Smith,* 8 S.W.3d at 537–38; *People v. Sharp,* 29 Cal.App.4th 1772, 36 Cal.Rptr.2d 117, 122–26 (1994), *disapproved of on other grounds by People v. Martinez,* 11 Cal.4th 434, 45 Cal.Rptr.2d 905, 903 P.2d 1037, 1048 (1995); *Ortiz v. State,* 188 Ga.App. 532, 374 S.E.2d 92, 95–96 (1988); *Stanger v. State,* 545 N.E.2d 1105, 1112–13 (Ind.Ct.App. 1989), *overruled in part on other grounds by Smith v. State,* 689 N.E.2d 1238, 1246–47 n. 11 (Ind.1997); *State v. Brockel,* 733 So.2d 640, 644–46 (La.Ct.App.1999); *People v. Tuck,* 147 A.D.2d 899, 537 N.Y.S.2d 355, 356 (1989); *Hoyt,* 806 P.2d at 209–10; *see also* Bruce E. Bohlman, *The High Cost of Constitutional Rights in Child Abuse Cases—Is the Price Worth Paying?,* 66 N.D.L.Rev. 579, 589 (1990) (suggesting this "technique of directional deviation" is the least restrictive means available to protect both the witness and the defendant's right to a fair trial).

[¶ 28] Miller has failed to cite a single case holding that a reconfiguration of the courtroom which does not physically

obstruct the defendant and witness's view of each other violates the Confrontation Clause, requires a *Craig* hearing, or requires a cautionary instruction. Under these circumstances, Miller has failed to demonstrate that the procedure employed in this case constituted a clear deviation from an applicable legal rule under current law. *See Erickstad,* 2000 ND 202, ¶ 22, 620 N.W.2d 136; *Olander,* 1998 ND 50, ¶ 14, 575 N.W.2d 658. On the record in this case, there is no obvious error.[3]

[¶ 29] The judgment of conviction is affirmed.

[¶ 30] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.

---

**3.** When a deviation from the traditional courtroom configuration is sought to accommodate a witness, the preferable procedure would be to notify opposing counsel in advance and allow an opportunity for an objection. Although the trial court has broad discretion to control the mode of interrogating witnesses, *see* N.D.R.Ev. 611(a), standard courtroom configuration is usually set by tradition or rule. *See* N.D.R.Ct. 10.1(b)(2) (all statements by counsel to the court will be made from counsel table). Although when the deviation from the normal configuration is minor it may not warrant a full *Craig* hearing, providing notice will preserve the record and allow an opportunity for objection. We are satisfied that, in this case, Miller had ample opportunity to object to the reconfiguration before Ann testified but failed to do so.