2002 ND 4

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Michael Paul WEAVER, Defendant and Appellant.**

No. 20010083.

Supreme Court of North Dakota.

Jan. 15, 2002.

Wade Lykken Webb, Assistant State's Attorney, Fargo, for plaintiff and appellee.

Douglas W. Nesheim (argued), Mervin D. Nordeng (on brief), Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, for defendant and appellant.

[¶ 1] NEUMANN, Justice.

Michael Paul Weaver appeals from a criminal judgment entered upon a jury verdict finding him guilty of contact by bodily fluids with a law enforcement officer or correctional facility employee. We affirm, concluding (1) the trial court did not err in denying Weaver's motion for judgment of acquittal, (2) the trial court's instruction on the definition of "knowingly" and its failure to instruct on a lesser included offense did not constitute obvious error, and (3) trial counsel's assistance was not plainly defective.

I

[¶ 2] On July 27, 2000, Weaver was an inmate at the Cass County Jail and had been placed in "lockdown." After Weaver urinated through the bars of his cell door onto the floor in front of the cell and refused to clean it up, he was moved to a special cell in which the inside is lined with plexiglass so the inmate cannot touch the bars or reach outside. There is a vertical gap in the plexiglass approximately one inch wide next to the sliding door of the cell.

[¶ 3] Shortly after being placed in this cell, Weaver intentionally caused the toilet to overflow, flooding the cell and the surrounding area. The water to Weaver's cell was shut off, and Cass County Deputy Sheriff Jay Sandvig began cleaning up the water in front of Weaver's cell. Deputy Sandvig testified Weaver threatened to urinate out his cell door if the water was not turned back on. Sandvig continued to clean up the water. As he was cleaning close to the cell door, Sandvig saw Weaver laughing and noticed that Weaver was urinating through the gap in the plexiglass onto Sandvig's pants, ankle, and shoe. At trial, Weaver denied urinating on Sandvig, admitting he urinated through the cell door onto the floor but that Sandvig was not in the area at the time.

[¶ 4] Weaver was charged with class C felony contact by bodily fluids with a law enforcement officer or correctional facility employee under N.D.C.C. § 12.1–17–11. The case was tried to a jury, which found Weaver guilty of the offense charged. A criminal judgment was entered and Weaver appealed.

## II

[¶ 5] Weaver argues the trial court erred when it denied his motion for judgment of acquittal at the close of the State's case-in-chief.

[¶ 6] Weaver was charged with contact by bodily fluids in violation of N.D.C.C. § 12.1–17–11:

12.1–17–11. Contact by bodily fluids or excrement.

1. An individual is guilty of an offense if the individual causes blood, emesis, excrement, mucus, saliva, semen, vaginal fluid, or urine to come in contact with:

    a. A law enforcement officer acting in the scope of employment;

    b. An employee of a correctional facility or the department of corrections and rehabilitation acting in the scope of employment unless the employee does an act within the scope of employment which requires or causes the contact;

. . . .

3. The offense is a class C felony if the individual knowingly causes the contact and is a class A misdemeanor if the individual recklessly causes the contact.

[¶ 7] Weaver was charged only with the class C felony, which required that the State prove he had caused the contact knowingly. "Knowingly" is defined in N.D.C.C. § 12.1–02–02(1)(b):

1. For the purposes of this title, a person engages in conduct:

. . . .

    b. "Knowingly" if, when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so.

Weaver argues the evidence presented by the State was insufficient to establish that he caused the contact "knowingly."

[¶ 8] Motions for judgment of acquittal are governed by N.D.R.Crim.P. 29(a), which provides in part:

(a) Motion Before Submission to Jury. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information, or complaint after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

[¶ 9] We recently outlined the standards guiding the determination of a Rule 29 motion in *State v. Gonzalez*, 2000 ND 32, ¶¶ 14–15, 606 N.W.2d 873 (citations omitted):

In deciding a motion for judgment of acquittal, the district court, upon reviewing the evidence most favorable to the prosecution, "must deny the motion if there is substantial evidence upon which a reasonable mind could find guilt beyond a reasonable doubt." *State v. Hafner*, 1998 ND 220, ¶ 21, 587 N.W.2d 177 (citations omitted). On appeal, to successfully challenge the sufficiency of the evidence, the defendant must show the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt.

When ruling on a motion for judgment of acquittal under Rule 29, N.D.R.Crim. P., the district court must assume the truth of the evidence supporting the State's case and then decide whether a reasonable person would be justified in concluding from this evidence that all the elements of the crime have been established beyond a reasonable doubt. To grant a judgment of acquittal, a district court must find the evidence is

insufficient to sustain a conviction of the offenses charged.

[¶ 10] In reviewing a question of sufficiency of the evidence under N.D.R.Crim.P. 29(a), we do not resolve conflicts in the evidence or reweigh the credibility of the witnesses. *State v. Delaney*, 1999 ND 189, ¶ 4, 601 N.W.2d 573; *State v. Steinbach*, 1998 ND 18, ¶ 17, 575 N.W.2d 193. On appeal, we determine only whether there is evidence which could have allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. *Delaney*, at ¶ 4; *Steinbach*, at ¶ 17.

[¶ 11] Viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the State, we conclude there was sufficient evidence upon which a reasonable mind could find guilt beyond a reasonable doubt. During the State's case-in-chief, Deputy Sandvig testified:

A After I was—been in there sucking up some of the water, cleaning up the area, he stated if we didn't turn his water on, he was going to start pissing out the door. That was his quote. "If you don't turn my water on, I'm going to start pissing out the door." I advised him that his water would not be turned on until we could get the mess cleaned up. That's just the way it was going to be. I couldn't take that chance of having him continue flooding the cell.

Q Okay. Did he indicate to you where on the door he was going to piss out of?

A He just said through the door.

Q Then what happened, if anything?

A As I continued to mop up the floor, it was, you know, a few minutes after that, I was still standing in very close proximity to the door, I noticed on—off to my side I could see him standing next to the door. I turned to look at him. He was laughing at me. And when I looked at him, he said, "I told you I was going to piss through the door." At that time he was standing up close to the door in the crack, kind of facing me, and when I looked down, there was a stream of what I believe to be urine landing on my lower left leg, ankle, shoe area while I was vacuuming. It was at that time that I had—I quit vacuuming at that time and advised some other officers what had happened.

Q Okay. You could see where he was standing in the cell when he was laughing at you?

A Yes.

Q And how close is that to you? Real close or far away?

A Within a foot and a half, I suppose. I'm just guessing. From where I was standing. Might be closer.

Q And he told you what?

A He stated, I told you I was going to start pissing out the—pissing through the door, out the door, or something like that.

. . . .

Q So you see him laughing at you, and then there's a stream of something on your leg and shoe?

A Yes.

Q What is that something?

A I believed it to be urine according to the way he was positioned. And he did have his penis out, so. What I could see through the Plexiglas standing there, whether he was aiming or not, but it was coming through the crack and it was landing on my left—lower left leg and shoe.

Q He saw you standing there; correct?

A Yes. He couldn't miss me.

Q Was he urinating on you or not?

A Yes.

Q Could you see that happening?

A Yes.

Q Where on your body was he urinating on?

A Lower left leg, shoe.

. . . .

Q ... Deputy Sandvig, again drawing your attention to what we left off with, working at the Cass County jail on July 27th, 2000, approximately 6:00 p.m. or 6:10 p.m., I believe you testified someone urinated on you; would that be correct?

A Yes.

Q How do you know that someone urinated on you?

A When I was vacuuming up the water in front of Michael Weaver's cell, like I said, I could see him standing very close to the door behind me. When I turned around, he was smiling and saying, "I told you I was going to piss out the door." And when I looked down towards the floor, I seen the stream of what I believed to be his urine coming out—in between the cracks of the door, landing on my lower leg and going onto the floor. By looking at the urine, there was discolor in the water, yellow tinge and whatnot. I could see it was coming out of his body at that time.

Q Could you tell where on his body, perhaps it's a silly question, but could you tell where on his body by looking at yourself?

A By looking through the Plexiglas, it was coming up from his penis.

[¶ 12] The jury could certainly infer from this evidence that Weaver caused the contact "knowingly." Viewed in the light most favorable to the State, Deputy Sandvig's testimony indicated Weaver was urinating through the gap in the plexiglass onto Sandvig's leg; Weaver was within eighteen inches of Sandvig; Weaver was laughing at Sandvig while he urinated on him; Weaver was so close he "couldn't miss" seeing Sandvig; and Weaver continued urinating on Sandvig after Sandvig turned and saw Weaver laughing. From this evidence, the jury could reasonably have concluded that Weaver knew, or had "a firm belief, unaccompanied by substantial doubt," *see* N.D.C.C. § 12.1-02-02(1)(b), that he was causing the contact.

[¶ 13] We conclude the trial court did not err in denying Weaver's motion for judgment of acquittal.

## III

[¶ 14] Weaver argues the trial court committed obvious error in instructing the jury on the definition of "knowingly" and in failing to instruct on the lesser included offense of recklessly causing contact by bodily fluids.

## A

[¶ 15] Weaver did not object to the instruction defining "knowingly" and did not request any alternative instruction on culpability. Nor did Weaver object to the trial court's failure to instruct on the lesser included offense or request an instruction on that offense.

[¶ 16] Although the trial court is initially responsible for correctly instructing the jury on the law of the case, both the prosecution and the defense have the responsibility to request and object to specific instructions. *State v. Erickstad*, 2000 ND 202, ¶ 17, 620 N.W.2d 136. In order to preserve the issue for appellate review under N.D.R.Crim.P. 30(c), a party must specifically object to the instruction at trial and distinctly state the ground for objection. *Erickstad*, at ¶ 17; *State v. Mathre*, 1999 ND 224, ¶ 5, 603 N.W.2d 173. If the defendant desires a more compre-

hensive instruction on any point of law than what the trial court has indicated it will give, the defendant must request specific written instructions, and if he fails to do so he cannot predicate error upon omissions in the charge given. *Erickstad*, at ¶ 18. When the defendant fails to properly object to a proposed instruction, or fails to specifically request an instruction or object to omission of an instruction, the issue is not adequately preserved for appellate review and our inquiry is limited under N.D.R.Crim.P. 52(b) to whether the jury instructions constitute obvious error affecting substantial rights. *State v. Miller*, 2001 ND 132, ¶ 24, 631 N.W.2d 587; *Erickstad*, at ¶ 18.

[¶ 17] Rule 52(b), N.D.R.Crim. P., allows this Court to correct obvious errors or defects affecting substantial rights even if they were not brought to the attention of the trial court. *Erickstad*, 2000 ND 202, ¶ 21, 620 N.W.2d 136. We exercise our power to consider obvious error cautiously and only in exceptional circumstances where the defendant has suffered serious injustice. *Miller*, 2001 ND 132, ¶ 25, 631 N.W.2d 587. We very rarely find obvious error under N.D.R.Crim.P. 52(b). *Miller*, at ¶ 25. In determining whether there has been obvious error, we examine the entire record and the probable effect of the alleged error in light of all the evidence, and the burden is upon the defendant to show the alleged error was prejudicial. *Erickstad*, at ¶ 22. An alleged error does not constitute obvious error unless there is a clear deviation from an applicable legal rule under current law. *Miller*, at ¶ 25; *Erickstad*, at ¶ 22.

### B

[¶ 18] Weaver argues the trial court committed obvious error in its jury instruction defining "knowingly." The court instructed the jury:

The word "knowingly" means that when the Defendant engaged in the conduct, he knew or had a firm belief, unaccompanied by a substantial doubt, that he was doing so, whether or not it was his purpose to do so.

This instruction is essentially a verbatim quotation of the applicable statutory definition of "knowingly" found in N.D.C.C. § 12.1–02–02(1)(b).

[¶ 19] Weaver argues the instruction constitutes obvious error because it allowed the jury to convict him even if "he did not intend to urinate on any police officer." In effect, Weaver is arguing he can only be convicted if the State proves he intentionally caused contact by bodily fluids. However, "intentionally" is a higher level of culpability set out in N.D.C.C. § 12.1–02–02(1)(a):

1. For the purposes of this title, a person engages in conduct:

    a. "Intentionally" if, when he engages in the conduct, it is his purpose to do so.

The legislature has specified that the level of culpability required to establish class C felony contact by bodily fluids is "knowingly," not "intentionally." N.D.C.C. § 12.1–17–11(3).

[¶ 20] The trial court's instruction mirrored the statutory definition of "knowingly." This did not constitute a deviation from an applicable legal rule under current law and therefore was not obvious error.

### C

[¶ 21] Weaver did not request an instruction on any lesser included offenses and did not object to the trial court's failure to give one. Weaver argues, however, that the trial court committed obvious error when it failed to instruct on the lesser included offense of recklessly causing contact by bodily fluids.

**[¶ 22]** Assuming that the class A misdemeanor of recklessly causing contact by bodily fluids is a lesser included offense of the class C felony of knowingly causing contact by bodily fluids, and assuming there was evidence to support instructing on such a lesser included offense, we nevertheless find no obvious error in this case. A defendant has the right to waive instructions on lesser included offenses as a trial tactic, taking an all-or-nothing risk the jury will not convict of the charged offense. *State v. Mathre*, 1999 ND 224, ¶ 7, 603 N.W.2d 173; *State v. Tweed*, 491 N.W.2d 412, 416 (N.D.1992). When a defendant adopts such an all-or-nothing trial strategy, the trial court's failure to instruct on lesser included offenses does not constitute obvious error. *Mathre*, at ¶ 7; *State v. Wright*, 470 N.W.2d 594, 597 (N.D.1991). We explained the rationale for this result in *Mathre*, at ¶¶ 7–8:

> The issue presented in this case is whether a defendant's failure to request lesser included offenses instructions without an explicit waiver of his right to such instructions should constitute obvious error, giving the silent defendant the right to a second trial. On balance, we think not.

> As a matter of logic and common sense, it seems only reasonable a jury asked to consider the possibility of self-defense should be told the full range of possibilities, including that a defendant's honest belief in the need for self-defense, if negligently or recklessly held, may support a conviction of a lesser included offense. But, the reasonableness of requiring complete instructions evaporates when combined with the defendant's option of waiving the instructions. With that possibility added, a reasonable requirement becomes unreasonable because a defendant by requesting an instruction on self-defense, and saying nothing about instructions on lesser included offenses, could create, with his silence, the possibility of "obvious" reversible error.

**[¶ 23]** The same result holds true in this case. Weaver adopted an all-or-nothing approach at trial and failed to request an instruction on recklessly causing contact by bodily fluids. Weaver has had his "shot" at an acquittal on the greater charge, and now on appeal argues it was obvious error for the court to fail to give an instruction on the lesser included offense. We cautioned in *Mathre*, at ¶ 8, that "[a] cunning defendant might do exactly that, hoping in the rush and confusion of the trial the court might well overlook the possibility" of lesser included offenses, thereby creating obvious error. We concluded that fairness and justice are better served by requiring defendants to request instructions on lesser included offenses, and the failure to give the instruction when none was requested did not constitute obvious error. *Id.* at ¶ 9.

**[¶ 24]** We conclude the trial court's failure to instruct on the class A misdemeanor of recklessly causing contact by bodily fluids was not obvious error.

## IV

**[¶ 25]** Weaver argues he should be granted a new trial because it is apparent from the record on appeal that the assistance of his counsel at trial was plainly defective. Weaver contends his counsel (1) should have objected to the court's instruction on the definition of "knowingly," (2) should have requested an instruction on a lesser included offense, and (3) should have requested sanctions based upon the State's failure to preserve evidence.

**[¶ 26]** The failure to preserve evidence argument is based upon Deputy Sandvig's admission that he washed the

clothes he had been wearing when the incident took place. Weaver argues Sandvig knew the clothing would be relevant in the criminal proceedings and should have preserved this evidence. When evidence is neither plainly exculpatory nor inculpatory, a defendant must show the police acted in bad faith in failing to preserve the potentially useful evidence. *State v. Steffes*, 500 N.W.2d 608, 613 (N.D.1993). Weaver's trial counsel questioned Sandvig about his failure to preserve the evidence and argued to the jury that Sandvig's actions raised a reasonable doubt about Weaver's guilt. Weaver contends on appeal that his counsel's failure to move for dismissal of the charges or request an instruction that it may be inferred the evidence would have been unfavorable to the State's case constituted ineffective assistance of counsel.

[¶ 27] We have often stated that claims of ineffective assistance of counsel should be raised through a petition for post-conviction relief, rather than upon direct appeal:

A claim of ineffective assistance of counsel at trial should not be brought on direct appeal, but rather through a petition for post-conviction relief. A post-conviction relief proceeding enables the parties to fully develop a record on the issue of counsel's performance and its impact on the defendant's case. Claims of ineffective assistance of counsel are ordinarily unsuited to summary disposition without an evidentiary hearing. However, when an ineffective assistance of counsel claim is asserted on direct appeal, we will examine the record to determine if the assistance of counsel was plainly defective. If we cannot readily determine assistance of counsel was plainly defective and there are no other grounds for reversal, then the defendant can later pursue the claim at a post-conviction proceeding where an adequate record can be developed.

*State v. Fraser*, 2000 ND 53, ¶ 23, 608 N.W.2d 244 (quoting *State v. Burke*, 2000 N.D. 25, ¶ 35, 606 N.W.2d 108).

[¶ 28] We have reviewed the record on appeal and cannot readily determine that counsel's assistance was plainly defective. Weaver may pursue these claims in a post-conviction proceeding, where an adequate record can be developed.

V

[¶ 29] The criminal judgment is affirmed.

[¶ 30] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 31] I agree with much of the majority's opinion, and write separately on the issue of a lesser included offense instruction.

[¶ 32] Convicted of *knowingly* causing contact by bodily fluids with a law enforcement officer or correctional facility employee, the defendant contends the trial court erred by failing to instruct on the lesser included offense of *recklessly* causing such contact.

[¶ 33] The defendant did not ask for a lesser included offense instruction, nor object to the trial court's failure to give one. The majority says the defendant could have waived—and implicitly did waive—his right to a lesser included offense instruction, assuming he was entitled to one. I write to point out that the defendant was not entitled to a lesser included offense instruction, and such an instruction would have been improper.

[¶ 34] The defendant admitted urinating out of his cell. The officer testified the defendant was very close, laughed, and spoke about what he was doing. The officer testified there was no way the defendant did not know. The defendant's

defense was that the officer lied. The defendant testified the officer was not present when the incident took place, and the officer testified he was present when the incident took place. If the jury had believed the defendant's testimony, the defendant could not have been convicted of either offense. "An instruction on the lesser included offense would have been improper because the evidence would not permit the jury to rationally convict the defendant of the lesser offense and acquit him of the greater." *State v. McDonell*, 550 N.W.2d 62, 63–64 (N.D.1996) (The district court did not err by not giving an instruction on the lesser included offense of sexual assault, because the only contested issue was the consent of the victim.); *see also State v. Tweed*, 491 N.W.2d 412, 413–14 (N.D.1992) (it was not error to refuse an instruction on the lesser included offense of negligent homicide, because the evidence did not show the defendant's conduct was negligent but rather showed the defendant's conduct was at least reckless). The trial court did not err, because the evidence presented did not entitle the defendant to a lesser included offense instruction. Indeed, the trial court would have erred by giving the instruction.

[¶ 35]   Dale V. Sandstrom, J.