# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 91

State of North Dakota,                                            Plaintiff and Appellee

     v.

Jesse Taylor, Jr.,                                            Defendant and Appellant

### No. 20240033

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable James S. Hill, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Dennis H. Ingold (argued), Assistant State's Attorney, and Julie A. Lawyer (appeared), State's Attorney, Bismarck, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**Jensen, Chief Justice.**

[¶1]   Jesse Taylor, Jr. appeals from a judgment entered after a jury convicted him of murder and aggravated assault. Taylor asserts three issues: (1) the jury's verdict was not unanimous, (2) the district court abused its discretion when the defense was denied the ability to properly cross-examine a State's witness, and (3) the court imposed an illegal sentence. We conclude the jury's verdict was unanimous, the defense was not denied the ability to properly cross-examine the witness, and a legal sentence was imposed. The judgment is affirmed.

I

[¶2]   In October 2022, this case was transferred from juvenile court to district court. Taylor was charged with murder, a class AA felony, in violation of N.D.C.C. § 12.1-16-01(1) and aggravated assault, a class C felony, in violation of N.D.C.C. § 12.1-17-02(1).  In August 2023, a seven-day jury trial commenced. The jury found Taylor guilty of both offenses. He was sentenced to life in prison with the possibility of parole for murder, and a concurrent five-year sentence for aggravated assault.

II

[¶3]   Taylor asserts the jury was not unanimous because Juror No. 2's individual response was not transcribed in the record. Neither Taylor nor the State raised any issue in regard to unanimity during the initial proceedings. After Taylor filed his notice of appeal, this Court remanded the case back to the district court.

[¶4]   "[I]ssues not raised before the trial court generally will not be addressed on appeal unless the alleged error rises to the level of obvious error under N.D.R.Crim.P. 52(b)." *State v. Kautzman*, 2007 ND 133, ¶ 21, 738 N.W.2d 1. Obvious error requires a showing of (1) an error, (2) that was plain, and (3) affected a substantial right. *State v. Gaddie*, 2022 ND 44, ¶ 4, 971 N.W.2d 811. "An error is not obvious unless the defendant demonstrates it is a 'clear or obvious

deviation from an applicable legal rule.'" *Id*. (quoting *State v. Olander*, 1998 ND 50, ¶ 15, 575 N.W.2d 658).

[¶5]   All verdicts in a criminal case must be unanimous. N.D. Const. art. I, § 13; N.D.R.Crim.P. 31(a). After the verdict is returned in an open court, "but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually." N.D.R.Crim.P. 31(d). "If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury." *Id*. However, the omission of a single juror's response to a jury poll in a trial transcript does not establish a violation of the constitutional right to a unanimous verdict. *See State v. Bey*, 975 N.W.2d 511, 518-19 (Minn. 2022) ("We agree with the weight of authority and conclude that jury polling is but one mechanism to ensure a unanimous jury verdict, such that an error in polling the jury does not categorically create a violation of the constitutional right to a unanimous jury. The right to poll the jury is not found in either our state or federal constitutions. Instead, it originated as a common law procedure to protect the constitutional rights of jury size and unanimity. . . . In many trials the jury is never polled; thus, it cannot be that polling is the only way to prove a proper jury verdict. An error in jury polling does not violate the constitutional right to a unanimous jury when the record sufficiently demonstrates the existence of other safeguards ensuring that the jury was properly impaneled and returned a unanimous verdict free of coercion or pressure.").

[¶6]   After the guilty verdicts were read at trial, each juror was asked, "are these your verdicts as I have read them?" in which all of the juror's affirmations were transcribed in the record except for the response of Juror No. 2. The court then confirmed for a second time that the verdict was unanimous: "all of the jurors have responded affirmatively[,] affirming the verdicts that I have read to them." Neither Taylor nor the State raised any issue in regard to unanimity at this time.

[¶7]   This Court stayed the appeal for 30 days under Rule 10(h)(1), N.D.R.App.P., to allow the district court to address Taylor's argument that the verdicts were not unanimous. A hearing was held in which it was confirmed for a third time that "[a]ll twelve jurors, including Juror No. 2, affirmed that verdicts

2

read were their verdicts on the two counts." We conclude from a review of the record that there was no error in regard to unanimity, Juror No. 2 confirmed the verdict was true and correct, and the verdict was unanimous.

III

[¶8]   Taylor asserts the district court erred in two evidentiary rulings, depriving him of the ability to impeach a State's witness and to present a self-defense argument.

[¶9]   When preserved, this Court reviews the district court's evidentiary rulings for abuse of discretion. *State v. Doll*, 2012 ND 32, ¶ 15, 812 N.W.2d 381. "A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably, or when its decision is not the product of a rational mental process or if it misinterprets or misapplies the law." *State v. Yousif*, 2022 ND 234, ¶ 5, 982 N.W.2d 870. To preserve a claim of error when the district court's evidentiary ruling excludes evidence, a party must make an offer of proof unless its substance is apparent from the context. N.D.R.Ev. 103(a)(2). A claim of error will also be preserved "by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." N.D.R.Crim.P. 51(a).

[¶10] However, issues not preserved may be addressed under an obvious error standard. *Kautzman*, 2007 ND 133, ¶ 21; *see* N.D.R.Crim.P. Rule 52(b) ("An obvious error or defect that affects substantial rights may be considered even though it was not brought to the court's attention."). "To establish an obvious error, the defendant must show: (1) error; (2) that is plain; and (3) the error affects the defendant's substantial rights." *State v. Woodman*, 2025 ND 12, ¶ 5, 16 N.W.3d 164 (quoting *State v. Gardner*, 2023 ND 116, ¶ 5, 992 N.W.2d 535). "[T]he error must be a clear deviation from an applicable legal rule under current law. There is no obvious error when an applicable rule of law is not clearly established." *Gardner*, ¶ 5 (quoting *State v. Lott*, 2019 ND 18, ¶ 8, 921 N.W.2d 428). "When a defendant proves obvious error occurred, this Court has discretion whether to rectify it and will only do so when the error seriously affects the fairness,

integrity or public reputation of judicial proceedings." *Woodman*, ¶ 5 (quoting *State v. Watts*, 2024 ND 158, ¶ 7, 10 N.W.3d 563).

[¶11] The first challenged evidentiary ruling is in regard to the following:

> Q. Okay. And you recall you did an interview with law enforcement pretty shortly after the incident?
> A. Right.
> Q. Okay. All right. Were you telling the truth when you did that interview?
> MR. INGOLD: Objection, Your Honor. I don't think that's an appropriate question for a witness.
> THE COURT: Sustained.

Taylor did not make an offer of proof, nor was the district court informed of the action Taylor desired the court to take or of Taylor's objection to the court's action and the grounds for that objection as required under Rule 51(a), N.D.R.Crim.P. Taylor failed to preserve this issue for appeal and this Court will review the evidentiary ruling for obvious error.

[¶12] The second challenged ruling is in regard to the denied attempt to play the witness's interview with law enforcement in order to refresh the witness's recollection and to impeach the witness:

> Q. Okay. All right. You don't recall what your answers were though, it doesn't sound like? Or do you recall your answers?
> A. I told them just what I said here.
> Q. Okay.
> MR. BECHER: Your Honor, we'd like to play an interview he did with law enforcement that night for purposes of impeachment.
> THE COURT: The way to do it, you have to at least show the witness the statement, ask him if it refreshes his recollection. And if it does, he can say it. If he doesn't, then you can impeach him by showing the document. You haven't done that, so.
> MR. BECHER: Sure. So—
> THE COURT: I'm not going to allow it that way. I don't know what you want to do, but that's the way you do it.
> Q. So if—so you just testified, Mr. Loewy, that you didn't—you don't recall whether or not you heard Maurice saying, what are you

going to do about it? What are you going to do about? You don't recall that?

A. I said, I can't remember.

Q. Okay. So you don't remember that. If you were able to listen to the interview you did with law enforcement would that refresh your recollection of what you told law enforcement at the time?

A. Yeah.

Q. Okay. All right.

MR. BECHER: We'd like to play the interview for purposes of—

THE COURT: You're going to be playing something that hasn't been introduced at this point. Mr. Ingold, position of the State?

MR. INGOLD: The position of the State is that the witness has testified he can't remember a statement. He's not testified inconsistently with the prior statement, and the defense has not shown that; therefore, it's not impeachment evidence. The witness simply testified he can't remember.

THE COURT: It would be improper impeachment. Again, the way you would do it if you want to see if his recollection is refreshed, you can show him the statement that was recorded by the Bismarck PD, then ask him if that refreshes his recollection. If he says, yes, he can testify. If he says, no, then you can impeach him by playing whatever that statement was. But it's improper at this point; so the objection is sustained. Next question.

Taylor did not make an offer of proof, nor did he inform the district court of the action he desired the court to take or state his objection to the court's action and the grounds for that objection as required under Rule 51(a), N.D.R.Crim.P. Taylor failed to preserve this issue for appeal and this Court will review the evidentiary ruling for obvious error.

[¶13] In regard to both evidentiary rulings, Taylor failed to argue obvious error on appeal. "We exercise our power to notice obvious error cautiously, and only in exceptional circumstances[.]" *State v. Rourke*, 2017 ND 102, ¶ 8, 893 N.W.2d 176 (quoting *City of Fargo v. Lunday*, 2009 ND 9, ¶ 5, 760 N.W.2d 136). "We are not ferrets, and we will not search through the record to find a party's argument for them." *Rourke*, ¶ 8. "We need not exercise our discretion to notice obvious error in an appeal when the defendant does not raise the issue of obvious error,

5

because it is the defendant's burden to show an obvious error that effects a substantial right." *Id.*

[¶14] We decline to exercise our discretion to consider whether the district court obviously erred.

IV

[¶15] Taylor asserts the district court imposed an illegal sentence because the age of 15, rather than the age of 18, was used to determine his life expectancy.

[¶16] "A district court is afforded wide discretion in sentencing." *State v. Henes*, 2009 ND 42, ¶ 6, 763 N.W.2d 502. "A sentence is illegal under Rule 35(a), N.D.R.Crim.P., if it is not authorized by the judgment of conviction," or if it is in "excess of a statutory provision" or otherwise "contrary to an applicable statute." *State v. Hutchinson*, 2017 ND 160, ¶ 9, 897 N.W.2d 321 (quoting *State v. Raulston*, 2005 ND 212, ¶ 7, 707 N.W.2d 464; *State v. Trieb*, 516 N.W.2d 287, 292 (N.D. 1994)). "This Court will vacate a district court's sentencing decision only if the court acted outside the limits prescribed by statute or substantially relied on an impermissible factor in determining the severity of the sentence." *Henes*, ¶ 6.

[¶17] Taylor was sentenced to life in prison with the possibility of parole for a conviction under N.D.C.C. § 12.1-16-01, requiring a determination of his life expectancy in accordance with N.D.C.C. § 12.1-32-09.1(1-2). "[A]n offender who is convicted of a crime in violation of section 12.1-16-01 . . . and who receives a sentence of imprisonment is not eligible for release from confinement on any basis until eighty-five percent of the sentence imposed by the court has been served or the sentence is commuted." N.D.C.C. § 12.1-32-09.1(1). When a life sentence with the possibility of parole is imposed, "the term 'sentence imposed' means the remaining life expectancy of the offender on the date of sentencing." N.D.C.C. § 12.1-32-09.1(2). "The remaining life expectancy of the offender must be calculated on the date of sentencing, computed by reference to a recognized mortality table as established by rule by the supreme court." *Id*.

[¶18] According to Administrative Rule 51, the district court is required to:

> [C]ompute the remaining life expectancy of the offender by reference to the Total All origins and races column of *Table A* (Expectation of life by age, race, sex and Hispanic origin) of the *United States Life Tables*, 2019, included in the *National Vital Statistics Reports*, Volume 70, No. 19, p. 3, March 20, 2022, prepared by the National Center for Health Statistics (Center for Disease Control and Prevention)
> https://www.cdc.gov/nchs/data/nvsr/nvsr70/nvsr70- 19.pdf.

N.D. Sup. Ct. Admin. R. 51(2). Life expectancy, as described in the *United States Life Tables*, 2019, is "the average number of years of life remaining for people who have reached a given age[.]"

[¶19] At the sentencing hearing, it was noted by the district court, and agreed upon by both parties, that Taylor was 18 years of age. According to the mortality table, Taylor fits between the age range of 15 years and 20 years, but there was no exact calculated life expectancy for the age of 18. The district court exercised its discretion, explaining the age of 15 years will be used to determine Taylor's life expectancy because, at the time of sentencing, Taylor had reached the age of 15, but not the age of 20. Such a determination followed the definition of life expectancy provided by the mortality table, which is to be "the average numbers of years of life remaining for people who have reached a given age."

[¶20] Although Taylor's exact age of 18 was not used, the district court used the age on the mortality table that Taylor had reached on the date of sentencing in accordance with the statute. *See, e.g.*, N.D.C.C. § 12.1-32-09.1(2); N.D. Sup. Ct. Admin. R. 51(2). The court did not act outside limits of the statute, nor did it substantially rely on any impermissible factors. We conclude the court did not impose an illegal sentence.

V

[¶21] We affirm the judgment.

[¶22] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte

[¶23] The Honorable Daniel S. El-Dweek, D.J., sitting in place of Bahr, J., disqualified.

**El-Dweek, District Judge, concurring.**

[¶24] While I concur in the result reached by the majority, one evidentiary ruling warrants comment. The district court sustained an objection to the question: "Were you telling the truth when you did that interview?" The grounds that the State offered was "I don't think that's an appropriate question for a witness."

[¶25] The State's response does not give the Supreme Court a meaningful opportunity to review for error. While the district court sustained the objection, the question is not objectionable. In *State v. Maxon*, 465 P.3d 304, 305 (Or. Ct. App. 2020), the Court held "[a]s a general matter, a court must not allow a witness to give 'vouching' testimony," but went on to say, "[t]he vouching rule is not implicated, however, when a witness asserts his or her own truthfulness . . . ." In that case, "defense counsel asked the witness whether his testimony had been 'accurate and truthful,' and the trial court *sua sponte* struck the question as 'vouching.'" The Oregon Court of Appeals held: "That was error. We conclude, however, that the error was harmless." *Id.* Similarly, in *Ingersoll v. State*, 511 P.3d 480, 487 (Wyo. 2022), a prosecutor asking a witness if they were lying did not constitute an impermissible "were they lying" question. "The prosecutor did not ask VL whether SS was lying. She asked VL whether VL was lying. Because such question is not an improper 'were-they-lying' question, Mr. Ingersoll cannot establish error, let alone plain error." *Id.*

[¶26] On the record, it is difficult to discern what was objectionable about the question: "Were you telling the truth when you did that interview?" The State's failure to state a ground based on a rule, statute, or the state or federal constitution shrouds the reasoning on which the objection was based. While I agree that Taylor's counsel failed to preserve the issue for review, it is too far to assume harmlessness is a foregone conclusion.

[¶27] One of the important purposes of live in-court testimony in view of the fact-finder is to determine the credibility of witnesses. "Any party, including the

party that called the witness, may attack the witness's credibility." N.D.R.Ev. 607. Thus, the question: "Were you telling the truth when you did that interview?" is highly relevant and an unobjectionable question put to an eyewitness in this case as it relates to "attack[ing] the witness's credibility." Unlike the question put to a defendant in his own trial asking if he was lying, the answer here cannot be inferred. *State v. Partain*, 444 P.3d 1136, 1139 (Or. Ct. App. 2019). We simply do not know how the witness would have answered, and his answer may affect a substantial right of the defendant.

[¶28] However, obvious error was not argued on appeal. Is this a case of "exceptional circumstance" where the Supreme Court "exercise [its] power to notice obvious error"? Majority, ¶ 13. I have to conclude it is not. The power of this Court to notice obvious error has been in cases where the district court misinstructed a jury on the burden of proof as in *State v. Johnson*, 2001 ND 184, ¶ 15, 636 N.W.2d 391, and this Court recognizes that it has ". . . very rarely found obvious error under [N.D.R.Crim.P.] 52(b)." *State v. Miller*, 2001 ND 132, ¶ 25, 631 N.W.2d 587. While not allowing this question may not be harmless, it is not as fundamental of an error as a district court erroneously shifting the burden of proof onto a defendant. Since the error here does not rise to this level, this is not an occasion where this Court should notice obvious error.

[¶29] I concur fully in the majority's opinion in all other respects.

[¶30] Daniel S. El-Dweek, D.J.